# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

IN RE:

**ECO-PRESERVATION SERVICES, L.L.C.,**　　　　**CHAPTER 11 BANKRUPTCY**
**SERMA HOLDINGS, LLC, and**　　　　　　　　　**CASE NO.: 22-02429 DSC11**
**JOHN MICHAEL WHITE,**　　　　　　　　　　　**JOINTLY ADMINISTERED**
　　　　　**Debtors.**

---

**BRIAN WALDING AS CHAPTER 11**
**TRUSTEE OF THE BANKRUPTCY**
**ESTATES**

　　　　　**Plaintiffs.**

v.　　　　　　　　　　　　　　　　　　　　　**ADVERSARY PROCEEDING**
　　　　　　　　　　　　　　　　　　　　　　　**AP NO.:**
**SERMA HOLDINGS, LLC,**
**KNOBLOCH, INC.,**
**SERMA FUNDING, LLC, and**
**TANNEHILL SEWER, LLC,**

　　　　　**Defendants.**


## VERIFIED COMPLAINT FOR SUBSTANTIVE CONSOLIDATION AND FOR TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

Plaintiff, Brian Walding, as Chapter 11 Trustee of the Bankruptcy Estates of ECO-Preservation Services, LLC ("ECO"), Serma Holdings, LLC ("Holdings" and "Debtor Defendant"), and J. Michael White ("White"; and collectively with ECO and Holdings, the "Debtor Entities"), by and through undersigned counsel, files this verified complaint for temporary and preliminary injunctive relief against Defendants Knobloch, Inc., Tannehill Sewer, LLC and Serma Funding, LLC (collectively "Non-Debtor Affiliates" and, together with Holdings, "Defendants") and for substantive consolidation of all Defendants with the estate of ECO, and states:

# I. JURISDICTION AND VENUE

1. This is an adversary proceeding pursuant to 11 U.S.C. § 105 and applicable bankruptcy and non-bankruptcy federal and state law, to substantively consolidate Debtors' Estates and their Non-Debtor Affiliates with the bankruptcy estate of Debtor ECO (the "Bankruptcy Estate").

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.

3. This adversary proceeding is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (E), and (O).

4. Venue for this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a).

# II. PARTIES

5. Brian Walding is the duly appointed Chapter 11 Trustee ("Plaintiff" or "Trustee") of the Bankruptcy Estates of ECO, Holdings, and White

6. Debtor ECO is a limited liability company organized under the laws of Alabama, with its principal place of business in Jefferson County, Alabama.

7. Debtor Holdings is a limited liability company organized under the laws of Alabama, with its principal place of business in Jefferson County, Alabama.

8. Debtor White is an individual over the age of 19 residing in Jefferson County, Alabama.

9. Defendant Knobloch, Inc. ("Knobloch") is a corporation organized under the laws of Alabama with its principal place of business in Jefferson County, Alabama.

10.     Defendant Serma Funding, LLC ("Funding") is a limited liability company organized under the laws of Alabama, with its principal place of business in Jefferson County, Alabama.

11.     Defendant Tannehill Sewer, LLC ("Tannehill Sewer") is a limited liability company organized under the laws of Alabama, with its principal place of business at in Jefferson County, Alabama.

### III.     PROCEDURAL BACKGROUND

12.     On October 5, 2022 (the "Petition Date"), ECO, Holdings, and White each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

13.     Debtors' bankruptcy cases have been procedurally consolidated for joint administration.

14.     On December 4, 2024, the Court entered an order granting certain creditors' motions for the appointment of a chapter 11 trustee for the Debtors' estates.

15.     The Court subsequently appointed Brian Walding as the Chapter 11 Trustee for each of the Debtors' Estates.

### IV.     FACTS

16.     The Debtors are two companies, ECO and Holdings, and their managing member, White, which collectively make up a part of a sewer collection and treatment enterprise for parts of west Jefferson County and Tuscaloosa County, including the Town of Lake View.

17.     The sewer collection and treatment enterprise is comprised of multiple components, described below, which transport raw sewage, or effluent, from homes and businesses in and around Lake View through a system of sewer collection pipelines to a wastewater treatment facility. From there, the effluent is treated and then eliminated through a discharge pipeline subject

3

to a National Pollutant Discharge Elimination System (NPDES) permit ("NPDES permit" or "discharge permit").

18.     This utility service is then billed to its users, and monthly fees are collected to pay for the service.

19.     Defendants' tactics in their sewer collection enterprise to recover fees and charges ultimately led to the filing of this bankruptcy.

20.     After overbilling and then compounding charges against the residents of Lake View, the Debtors were sued on September 11, 2017 and, ultimately, found liable for their business practices, including committing the tort of outrage (the "Lawsuit").

21.     A multi-million dollar verdict was entered in the Lawsuit against the Debtors on September 9, 2021.

22.     In the time from the filing of the Lawsuit leading up to the judgment, multiple component parts of the sewer collection and treatment enterprise were transferred from the possession or control of the Debtors to the Non-Debtor Affiliates, who then began extracting obligations from Debtor ECO to pay for use of the necessary components of the sewer service system.

       a.   *The Sewer Enterprise*

23.     Presently, the Debtors and Non-Debtor Affiliates each own or control various components of the sewer collection and treatment enterprise, including at least the following (collectively, "Sewer Enterprise"):

       A.   The wastewater treatment plant;

       B.   The land upon which the treatment plant is situated;

       C.   The waste collection system;

4

D.  The discharge pipelines;

E.  The NPDES permit;

F.  Customer service and billing; and

G.  The loan facility for construction of various sewer system components; and

H.  A franchise agreement with the City of Lakeview to provide sewer collection services to its constituents.

24.  Each of these components is necessary to the effective delivery of sewer services to the customers of the Sewer Enterprise.

b.  *The Interconnected Entities ownership*

25.  Debtor ECO is owned in part by Debtor Holdings.

26.  Debtor Holdings is owned by Debtor White and his wife, Mary Paula White ("White's Wife").

27.  Debtor Holdings in the managing member of Debtor ECO.

28.  Debtor White is the managing member of Debtor Holdings.

29.  Defendant Knobloch is owned by White and White's Wife.

30.  Plaintiff is informed and believes that Knobloch has no employees, Knobloch's income is derived solely from its relationship with Debtor ECO, and Knobloch only conducts business with entities in which Debtor White and/or or White's Wife have an interest.

31.  Defendant Funding is a wholly-owned subsidiary of Debtor Holdings.

32.  Defendant Tannehill Sewer is a wholly owned subsidiary of Defendant Knobloch.

33.  Plaintiff is informed and believes that Tannehill Sewer, which is totally owned by Knobloch, has no employees and does not maintain its own bank accounts or file its own tax

5

returns. Instead, Tannehill Sewer files taxes through Knobloch and uses Knobloch's bank accounts such that any income of Tannehill Sewer is not separated from the income of Knobloch.

c. *Pre-Litigation Transactions and Business Operations*

34. The wastewater treatment plant was constructed by Debtor ECO (formerly known as Tannehill STP, LLC) in the mid-to-late 1990s.

35. ECO financed the construction of the wastewater treatment plant through a construction loan with First Commercial Bank.

36. In addition to funding the construction of the wastewater treatment plant, this loan also funded the construction of the sewage discharge pipeline and the sewage discharge pump, and it was secured by, *inter alia*, leasehold mortgages from ECO and Knobloch, the personal guaranty of White, and assignments of a discharge license agreement between Knobloch and ECO.

37. With proceeds from the First Commercial loan, ECO paid to construct the discharge pipeline that runs from the wastewater treatment plant to the discharge site; however, Defendant Knobloch owns the discharge pipeline and the NDPES discharge permit that allows for discharge of treated effluent into a nearby creek.

38. On February 11, 1998, White executed a License Agreement on behalf of each the Debtors Holding and ECO and Defendant Knobloch that allowed ECO to license and use NPDES Permit No. AL0068420 (the "Discharge Licensing Agreement"), which the agreement says is owned and controlled by Knobloch. *See* Ex. A, which is a true and correct copy of the License Agreement between ECO, Holding, and Knobloch.

39. Under the Discharge Licensing Agreement between Knobloch, Holdings, and ECO, ECO became obligated to Knobloch to pay monthly fees for use of the discharge pipeline that ECO had borrowed more than $430,000 to construct. ECO also became obligated to pay all expenses

6

of Knobloch related to the discharge pipeline and discharge of effluent discharged pursuant to the NPDES permit. In short, Knobloch owns the NPDES permit and the discharge pipeline that ECO borrowed money to build, and Knobloch had the ability under the Discharge Agreement to charge ECO for use of the discharge pipeline and permit, and for all fees associated with their use and operation.

40.    Although the Discharge License Agreement purported to require ECO to pay these fees starting in 1998 (initially at $3,685 per month plus operation expense, and increasing to $5,520 per month by 2000), Knobloch did not actually require ECO to pay, and ECO did not pay, any monthly fees for nearly 20 years, until after White transferred multiple sewer system assets during the pendency of the Lawsuit as is discussed below.[1]

41.    The wastewater treatment plant was constructed on land that was then owned by Henry H. Taylor, who was also at that time a member of ECO.

42.    In February of 1998, ECO entered into a lease with Taylor for the wastewater treatment plant site, under which ECO was to pay $650 per month for a term of 25 years (through December 2023), with options to extend the lease and an option for ECO to purchase the land for $75,000. *See* Ex. B, which is a true and correct copy of the lease between ECO and Taylor.

43.    ECO never paid rent to Taylor under the lease for more than 20 years, until after White transferred multiple sewer system assets during the pendency of the Lawsuit, as is discussed below.

44.    The sewer collection system, which runs from residences and business in Lake

---

[1] White has admitted in sworn testimony that, prior to 2019, ECO was never required to pay fees to Knobloch under the Discharge Agreement; however, after White began moving sewer assets in 2019, he created a "forbearance" agreement between Debtor ECO and Defendant Knobloch, signing for both parties, whereby ECO would pay Knobloch additional "catch-up" payments for the 20-year failure to pay. White did not make any effort to determine what defenses ECO would have for being required to pay any of these amounts, and ECO has continued to pay them both after a judgment was entered in the Lawsuit and after the Petition Date.

View, Alabama and surrounding areas to the waste water treatment plant (the "Sewer Collection System") was initially leased to Debtor Holdings by the Governmental Utility Services Corporation of the Town of Lake View (the "GUSC"), for $10.00 per *year*, for a term to last at least through 2040. Under the lease agreement with GUSC, Holdings also had an option to purchase the sewer collection system for $10.00.

45.     On June 21, 1999, the Town of Lakeview granted a sewer franchise to Holdings via Ordinance 99-05 (the "Sewer Franchise").

46.     On July 13, 1999, the GUSC transferred the Sewer Collection System to Holdings for $10 and Holdings' commitment to upgrade and maintain the system. *See* Ex. C, which is a true and correct copy of the July 13, 1999 Purchase Agreement between Holdings and GUSC.

47.     Prior to the restructuring and transfer of sewer system components discussed below, Debtors, and particularly ECO, were not required to pay for use of those components, and in many instances (as detailed herein) Debtors owned or controlled the assets that the Non-Debtor Affiliates are now charging ECO exorbitant rates to use.

48.     To summarize, for more than 20 years, the Debtor Entities and their Non-Debtor Affiliates and insiders operated the Sewer Enterprise as a single business, transacting business substantially or exclusively with one another without regard to corporate formalities or obligations. Indeed, to the extent inter-company obligations existed on paper, they were ignored for 20 years until the threat of a substantial adverse judgment in the Lawsuit loomed on the horizon.

49.     In March of 2008, First Commercial Bank assigned the construction loan to Funding, which is a wholly owned subsidiary of Debtor Holdings.

        d.     *Post-Litigation Shuffling, Transfers, and Payments*

50.     On January 1, 2019, Debtor ECO executed an Amended and Restated Promissory

8

Note in the amount of $1,150,000.00 in favor of Defendant Funding. The Note was executed by Debtor White in his capacity as the Manager of Holdings, which is the Senior Manager of ECO. *See* Ex. D, which is a true and correct copy of the Amended and Restated Promissory Note. Plaintiff asserts that Debtor ECO has been paying Defendant Funding under the terms on this Note and on June 9, 2025, paid of the sum of $6,416.09.

51.     In or around June 2019, White created Tannehill Sewer LLC ("Tannehill Sewer") by renaming and repurposing a defunct entity – Stratford Homes and Land LLC. At the time of its renaming, Tannehill Sewer was wholly owned by Holdings. As shown below, Tannehill Sewer would later be used to re-house the Sewer Collection System, franchise agreement, ground lease, and account services.

52.     On August 2, 2019, GUSC purported to convey the Sewer Collection System to Tannehill Sewer for ten dollars ($10) despite the fact that the system had previously been transferred to Holdings. *See* Ex. E, which is a true and correct copy of GUSC's Grant of Sewer Parcels, Easements, Personal Property and Other Rights and Assets to Tannehill Sewer.

53.     On August 17, 2019, Holdings, in a document signed by Debtor White in his capacity as Manager of Holdings, purported to assign the Sewer Franchise granted to it by the City of Lakeview, and the Purchase Agreement between Holdings and GUSC, "dated June [Sic] 13, 1999" to Tannehill Sewer. *See* Ex. F, which is a true and correct Copy of the Assignment of Sewer Franchise and Contract Documents.

54.     Also on August 17, 2019, Debtor ECO and Defendant Tannehill Sewer entered into a Sewage Collection System Lease, which was executed on behalf of both parties by Debtor White. *See* Ex. G, which is a true and correct copy of the Sewage Collection System Lease between ECO and Tannehill Sewer. The initial lease payment was $11,789.73 per month, going up by 10% on

9

January 1, 2021, and 8% on January 1st of each subsequent year. Plaintiff is informed and believes that the current monthly lease payment ECO makes to Tannehill Sewer for the Sewer Collection System is more than $17,000 per month.

55.     On August 18, 2019, Debtor ECO and Defendant Knobloch entered into a Forbearance Agreement concerning ECO's alleged indebtedness of over $1.4 Million.  See Ex. H (the Amended Forbearance Agreement, which mentions the original Forbearance Agreement).

56.     On December 26, 2019, Tannehill Sewer (not option-holder ECO) bought the land on which the wastewater treatment system sits from Taylor for $75,000  *See* Ex. I, which is a true and correct copy of the deed conveying the wastewater treatment plant site from Tyler to Tannehill Sewer for $75,000. Plaintiff is informed and believes that ECO had enough capital to exercise the option, but that Debtor White, acting for both ECO and Tannehill Sewer, caused ECO to fail to exercise the option and Tannehill Sewer to purchase the property.

57.     Also on December 26, 2019, Tannehill Sewer entered into a Lease Modification with Debtor ECO that was executed on behalf of both parties by Debtor White in his listed capacity.  *See* Ex. J, which is a true and correct copy of the Lease Modification between ECO and Tannehill Sewer: This Lease Modification had an initial term of four years,  obligating ECO to pay Tannehill Sewer $4,000 per month (*i.e.*, a 615% increase over what ECO would have been obligated to pay to Taylor through December 2023). ECO has a right to extend the lease by additional one-year terms provided that Tannehill Sewer does not provide 30-days written notice prior to the end of the existing term of its intent not to extend the lease.

58.     Prior to this lease with Tannehill Sewer, ECO did not pay rent or fees associated with the Sewer Collection System, and Holdings was obligated to pay only $10.00 per year.  Thus,

the new system lease entered into between Tannehill Sewer and ECO in August 2019 absurdly increases the payments made by Debtor Entities to one of the Non-Debtor Affiliates.

59.     On January 1, 2020, in a transfer approved by Debtor White in his capacity as manager of Holdings, Holdings transferred its interest in Tannehill Sewer to Knobloch purportedly for: "One (1) Dollar, the assumption of certain liabilities and other good and valuable consideration." *See* Ex. K, which is a true and correct copy of the Transfer Agreement, Tannehill Sewer, LLC Membership Interest to Knobloch, Inc.

60.     Prior to April 1, 2020, Debtor White and White's Wife jointly owned 100% of the shares of Knobloch. *See* Ex. L, which is a true and correct copy of the Stock Certificates of Knobloch. Plaintiff is informed and believes that White's Wife paid no consideration for her interest in Knobloch.

61.     On April 1, 2020, the jointly owned shares of Knobloch were separated and further conveyed, for no consideration, with Debtor White retaining 25% of the shares and White's Wife retaining 75% of them. *See* Ex. L.

62.     On or about September 1, 2021, Debtor ECO and Defendant Tannehill Sewer entered an Account Servicing Agreement running from September 1, 2021, to December 31, 2026, for Tannehill Sewer to provide business, financial administration, billing, collection and customer services for ECO. This agreement was executed on behalf of both parties by Debtor White. *See* Ex. M, which is a true and correct copy of the Account Servicing Agreement between ECO and Tannehill Sewer. These services were formerly provided by another insider company, Bama Management, which was also a party to the Lawsuit.

63.     Plaintiff is informed and believes that on October 14, 2021:

A.     Debtor White and White's Wife transferred $240,800.00 from their joint account to Defendant Funding;

11

B. Debtor Holding transferred $286,269.36 to Defendant Knobloch; and

C. Debtor Holding transferred $305,000.00 to Defendant Tannehill Sewer.

64. On March 15, 2022, Debtor ECO and Defendant Knobloch entered into an Amended Forbearance Agreement concerning ECO's alleged indebtedness of over $1.7 million, which was executed on behalf of both entities by Debtor White. *See* Ex. L, which is a true and correct copy of the Amended Forbearance Agreement between ECO and Knobloch.

65. Before May 15, 2023, White and White's wife were the sole directors of Knobloch. White served as President of Knobloch and the manager of Tannehill Sewer, while White's Wife served as the Secretary and Treasurer of Knobloch.

66. On May 15, 2023, Debtor White and White's Wife caused White to be removed as an officer and director of Knobloch. The Whites then selected White's Wife to be the President, Vice President, Secretary and Treasurer of Knobloch, and White's Wife replaced Debtor White as the Manager of Tannehill Sewer.

67. On January 1, 2024, without notice to creditors and without seeking bankruptcy court approval, ECO and Funding renewed the construction loan, but increased the interest to be paid by ECO to Funding under the loan from 6.8 percent to 9.5 percent. White signed the agreement for both companies.

68. On January 1, 2024, ECO and Tannehill Sewer executed a Sewage Collection and Lease Modification agreement without bankruptcy court approval or notice to creditors, purporting to obligate ECO to continue paying highly inflated rent for use of the Sewer Collection System. Since Tannehill Sewer was assigned ownership of this system by Holdings, ECO has paid Tannehill Sewer more than $650,000, where before it would have paid nothing, and Holdings would have owed only $10 per year (or approximately $50 over the same timespan). This

12

agreement was signed by White on behalf of ECO and by White's Wife on behalf of Tannehill Sewer.

69. On January 1, 2024, without Court approval, ECO entered into an "Amended and Restated License Agreement" with Knobloch, which increased the license fees paid by ECO to Knobloch from $5,520 to $5,825 per month. This includes fees for use of the discharge pipeline that ECO borrowed money to build, and for which ECO is still paying pursuant to the construction loan now held by Funding. This agreement was signed by White on behalf of ECO and by White's Wife on behalf of Knobloch.

70. On January 1, 2024, Debtor ECO and Defendant Tannehill Sewer executed a modified Account Service Agreement without notice to creditors and without bankruptcy court approval, even though the existing agreement did not expire until December 2026. Under the modified agreement, ECO became obligated to pay for additional, vaguely-described document fees, processing fees, and water connection and disconnect fees. White and White's Wife executed this agreement, as well.

71. Several months later, the Court denied approval for these agreements, yet no effort was made by ECO to seek an extension or renewal of any of the agreements through proper procedure. Instead, the Debtor Entities and their Non-Debtors Affiliates continued to carry out the sewer enterprise on a month-to-month basis as determined by White.

e. *Current Operation of the Sewer Enterprise.*

72. The Sewer Franchise from the Town of Lakeview is now purportedly held by Tannehill Sewer.

73. The Sewer Collection System and the land on which the Wastewater treatment facility sits are owned by Defendant Tannehill Sewer.

13

74.     Defendant Tannehill Sewer now handles the billing, collection, and customer service functions for ECO pursuant to an Account Services Agreement.

75.     The discharge pipeline from the Wastewater treatment facility to the discharge site and the Discharge Permit are owned by Defendant Knobloch.

76.     Debtor ECO pays for the operation and maintenance of both the discharge pipeline and the Sewer Collection System in addition to paying for the operation and maintenance of its wastewater treatment plant.

77.     The result is that Debtor ECO is now obligated to pay exorbitant, unnecessary amounts for use of necessary Sewer Enterprise assets and components to Non-Debtor Affiliate entities Knobloch and Tannehill Sewer, which is now a wholly-owned subsidiary of Knobloch after being transferred to it from Holdings for no consideration.

78.     The Sewer Enterprise cannot operate without the components owned by Defendants Knobloch and Tannehill Sewer. For instance:

    A.     Sewage cannot be collected without the Sewage Collection System that Tannehill purports to own. The harm to customers of the Sewer Enterprise would be devastating if that critical component ceased operations;

    B.     Treated wastewater cannot be discharged without Knobloch's discharge pipeline and the discharge permit it holds. The Sewer Enterprise would cease to function if treated wastewater could not be discharged, resulting in devasting harm to customers of the Sewer Enterprise, and

    C.     The Sewer Enterprise requires, billing, collection, and customer service functions to operate effectively.

14

79.    In addition, as shown above, Debtors and their Non-Debtor Affiliates have used ECO's accounts and Sewer Enterprise income at will, and obligated ECO to pay unnecessary rents, fees, and expenses to offload the income to Non-Debtor Affiliates and insider White's Wife, while leaving all debt obligations to be paid by Debtor ECO.

80.    This use of ECO's accounts and income was done with both the intent, and the effect, of frustrating and defrauding creditors and hindering the Debtors' efficient progress toward a successful reorganization.

## COUNT I
## SUBSTANTIVE CONSOLIDATION OF SERMA HOLDINGS, LLC

81.    Plaintiff realleges paragraphs 1 through 80 as though fully set forth herein.

82.    ECO and Holdings have common ownership in that ECO is owned in part by Holdings, and Holdings is ECO's managing member.

83.    Holdings is owned by Debtor White and White's Wife, and White is its managing member.

84.    Holdings is the sole owner of Non-Debtor Affiliate Funding, which holds the construction loan to ECO and, upon information and belief, approximately $1.8 that belong to ECO.

85.    Holdings is also the former 100% owner of Non-Debtor Affiliate Tannehill Sewer, which the Whites caused to be transferred to Knobloch for no consideration.

86.    Holdings is also either the current or former owner of the Sewer Collection System, which the GUSC transferred to Holdings on July 13, 1999, and then later purported to transfer to Tannehill Sewer.

87.    Given the identity of business interests and ownership; the necessity of the Sewer Enterprise components to both the reorganization of the Debtors and to the operations of the Sewer

15

Enterprise itself; the uncertainty surrounding actual ownership of necessary sewer assets; and the efficiency of consolidating the corporate functions of Holdings with ECO, it is necessary and appropriate that the business affairs of Holdings be administered and resolved in conjunction with the affairs of the Debtors in one bankruptcy estate.

88.     Substantive consolidation will streamline the distribution of assets among all creditors and the prosecution of litigation claims, and it is necessary to ensure the equitable treatment of all creditors, including customers of the Sewer Enterprise.

**COUNT II**
**<u>SUBSTANTIVE CONSOLIDATION OF TANNEHILL SEWER, LLC</u>**

89.     Plaintiff realleges paragraphs 1 through 80 as though fully set forth herein.

90.     The Debtors and Tannehill Sewer have common ownership in that ECO is owned in part by Holdings and Holdings is owned by White and White's Wife, while Tannehill Sewer is wholly owned by Knobloch, which is also owned by White and White's Wife.

91.     All or substantially all of Tannehill Sewer's business is related to the Sewer Enterprise, and Tannehill Sewer does all or substantially all of its business with the Debtors and other insiders of the Debtors in furtherance of the Sewer Enterprise.

92.     Tannehill Sewer holds multiple assets that are necessary for the operation of the Sewer Enterprise, including the Sewer Franchise from the Town of Lake View, the Sewer Collection System, and the land upon which ECO's wastewater treatment plant is situated.

93.     Prior to Tannehill Sewer receiving ownership or assignment of these assets, they were owned or controlled by Debtors ECO and Holdings, and Holdings was also the 100% owner of Tannehill Sewer.

94.     Tannehill Sewer was permitted to usurp ECO's interest in the lease for the land where ECO's wastewater treatment plant is located by exercising ECO's right to purchase the land

16

for $75,000, and by then modifying the existing lease to charge ECO an exorbitant amount in monthly rent for the benefit of Knobloch, White, and their insiders, including White's Wife.

95.     Tannehill Sewer was also given, for no consideration, Holdings' Sewer Collection System and rights under the Sewer Franchise from the Town of Lake View to provide sewer services to the businesses and residences of Lake View and others, for which Tannehill Sewer now also charges ECO an exorbitant and unnecessary rate.

96.     Tannehill Sewer was subsequently and purportedly transferred to Knobloch for no consideration.

97.     Each of these transfers and obligations were orchestrated by White and others, including White's Wife, and resulted in draining Debtors' assets for the benefit of the Non-Debtor Affiliates and insiders.

98.     Upon information and belief, Tannehill Sewer never had any legitimate business operations separate and apart from the business of the Debtors.

99.     Given the identity of business interests and necessity of the Sewer Enterprise components to both the reorganization of the Debtors and to the operations of the Sewer Enterprise itself, it is necessary and appropriate that the business affairs of Tannehill Sewer be administered and resolved in conjunction with the affairs of the Debtors in one bankruptcy estate.

100.    Substantive consolidation will streamline the distribution of assets among all creditors and the prosecution of litigation claims.

101.    Substantive consolidation is also necessary to ensure the equitable treatment of all creditors, including customers of the Sewer Enterprise, and particularly as creditors of the Debtors will receive a smaller share of assets if Tannehill Sewer is not brought into these proceedings,

17

allowing Non-Debtor Affiliates to shield assets through use of improper insider dealings and use of a sham entity.

**COUNT III**
**SUBSTANTIVE CONSOLIDATION OF KNOBLOCH, INC.**

102.    Plaintiff realleges paragraphs 1 through 80 as though fully set forth herein.

103.    The Debtors and Knobloch have common ownership in that Debtor ECO is owned in part by Debtor Holdings and Holdings is owned by White and White's Wife, who also own Knobloch.

104.    All or substantially all of Knobloch's business is related to the Sewer Enterprise, and Knobloch does all or substantially all of its business with the Debtors and other insiders of the Debtors in furtherance of the Sewer Enterprise.

105.    Knobloch holds multiple assets that are necessary for the operation of the Sewer Enterprise, including the NPDES permit and the sewer discharge pipeline, as well as owning Tannehill Sewer, which Knobloch received from Debtor Holdings for no consideration.

106.    Knobloch ignored intercorporate obligations with the Debtors for years, allowing ECO to use the NPDES permit and the discharge pipeline, which ECO paid to build, for no charge until the threat of judgment in the Lawsuit and insolvency threatened White and his Sewer Enterprise.

107.    Given the identity of business interests and necessity of the Sewer Enterprise components to both the reorganization of the Debtors and to the operation of the Sewer Enterprise itself, it is necessary and appropriate that the business affairs of Knobloch be administered and resolved in conjunction with the affairs of the Debtors in one bankruptcy estate.

108.    Substantive consolidation will streamline the distribution of assets among all creditors and the prosecution of litigation claims.

18

109.     Substantive consolidation is also necessary to ensure the equitable treatment of all creditors, including customers of the Sewer Enterprise, and particularly as creditors of the Debtors will receive a smaller share of assets if Knobloch is not brought into these proceedings, thereby allowing Non-Debtor Affiliates to shield assets through use of improper insider dealings and use of a sham entity.

## COUNT IV
## SUBSTANTIVE CONSOLIDATION OF SERMA FUNDING, LLC

110.     Plaintiff realleges paragraphs 1 through 80 as though fully set forth herein.

111.     Funding is the wholly owned subsidiary of Debtor Holdings, which is wholly owned by White and White's Wife.

112.     Funding holds, by assignment from First Commercial Bank, the construction loan to ECO used for the construction of, among other things, its wastewater treatment plant and the discharge pipeline owned by Knobloch.

113.     Plaintiff is informed and believes that Funding also holds approximately $1.8 of funds that belong to ECO.

114.     Given the identity of business interests and the loan and the funds of ECO that Funding holds, to both the reorganization of the Debtors and to operation of the Sewer Enterprise itself, it is necessary and appropriate that the business affairs of Funding be administered and resolved in conjunction with the affairs of the Debtors in one Bankruptcy Estate.

115.     Substantive consolidation will streamline the distribution of assets among all creditors and the prosecution of litigation claims.

116.     Substantive consolidation is also necessary to ensure the equitable treatment of all creditors, including customers of the Sewer Enterprise, and particularly as creditors of the Debtors will receive a smaller share of assets if Funding is not brought into these proceedings, thereby

19

allowing Non-Debtor Affiliates to shield assets through use of improper insider dealings and use of a sham entity.

WHEREFORE, as concerns Counts I-IV, Plaintiff Brian Walding, as Chapter 11 Trustee of the Bankruptcy Estates of the Debtors, respectfully requests the Court enter judgment on his behalf against Defendants Serma Holdings, LLC, Tannehill Sewer, LLC, Knobloch, Inc., and Serma Funding, LLC as follows:

A.    Substantively consolidating the assets and liabilities of Defendants Tannehill Sewer, LLC, Knobloch, Inc., and Serma Funding, LLC with the estates of the Debtors into a single Bankruptcy Estate of Eco Preservation Services, LLC effective as of the Petition Date;

B.    Enabling the Trustee to take over administration of such property and commence orderly reorganization of such assets for the benefit of creditors of the Bankruptcy Estate; and

C.    Granting such other and further relief as the Court deems just and proper.

**COUNT V**
**REQUEST FOR INJUNCTIVE RELIEF**

117. Plaintiff realleges paragraphs 1 through 116 as though fully set forth herein.

118. Plaintiff seeks a temporary restraining order and preliminary injunction to maintain the existing operations while the court determines the substantive consolidation claims set forth in Counts I-IV above.

119. So far, Plaintiff has been able to keep the Sewer Enterprise operational for the benefit of creditors of the Bankruptcy Estates, and those creditors living in, and operating businesses in, the parts of west Jefferson County and Tuscaloosa County, including the Town of Lake View, that are serviced by the Sewer Enterprise under the existing situation. Plaintiff can

20

continue to do so until the substantive consolidation claims set forth in Counts I-IV above are resolved as long as the existing operations are maintained. However, Plaintiff's operation of the Debtor's estates, and the continued operation of the Sewer Enterprise, will be impeded by any further actions by White and/or the Non-Debtor Defendants and those acting in concert with them, such as those set forth above, that would further interfere with, prevent, or impede Plaintiff from operating the Debtors' estates to keep the Sewer Enterprise operational.

120.    Indeed, despite this Court's direction, White and White's Wife have repeatedly threatened to stop cooperating with Plaintiff to ensure the continued operation of the Sewer Enterprise and delivery of services to Debtors' customers in west Jefferson County and Tuscaloosa County, including the Town of Lake View.

121.    By virtue of the preceding allegations, Plaintiff has demonstrated a likelihood of success on the merits at the final hearing. The Plaintiff has also demonstrated a likelihood of a successful reorganization.

122.    Unless the Non-Debtor Defendants and those acting in concert with them are temporarily and/or preliminarily enjoined from taking the actions set forth below that would further interfere with, prevent, or impede Trustee from operating the Sewer Enterprise, the Bankruptcy Estate and those creditors living in and operating businesses in the parts of west Jefferson County and Tuscaloosa County, including the Town of Lake View, that are serviced by the Sewer Enterprise will be irreparably injured by the Trustee no longer being able to operate the Sewer Enterprise. In addition, if such actions by the Non-Debtor Affiliates and those acting in concert with them are not temporarily and/or preliminarily enjoined, creditors will be frustrated and defrauded and the Trustee would be prevented a successful reorganization.

21

123. Plaintiff, the Bankruptcy Estates, and those creditors living in and operating businesses in the parts of west Jefferson County and Tuscaloosa County, including the Town of Lake View, that are serviced by the Sewer Enterprise have no adequate remedy at law if Plaintiff is not able to operate the Sewer Enterprise and sewer services are shut down.

124. The threatened harm to the Bankruptcy Estates and creditors outweighs the harm that the Temporary Restraining Order ("TRO") or preliminary injunction could inflict on the Non-Debtors, who as set forth above are currently receiving benefits to which they are not entitled.

125. The entry of the TRO or preliminary injunction will serve the public interest by allowing the critical Sewage Enterprise to continue to operate. The public interest and the public health, particularly for those living in and operating businesses in the parts of west Jefferson County and Tuscaloosa County, including the Town of Lake View, that are serviced by the Sewer Enterprise will be harmed if the Sewage Enterprise ceases operation.

126. Pursuant to Bankruptcy Rule 7065, the Trustee requests that the court issue the requested TRO and preliminary injunction without the security set forth in Rule 65(c) of the Federal Rules of Civil Procedure.

WHEREFORE as concerns Count IV, Trustee respectfully requests that the Court issue a TRO and/or preliminary injunction immediately that, until further order of this Court:

    a. Enjoins and restrains Tannehill Sewer, LLC and its agents, servants, employees and attorneys and those in active concert or participation with it including but not limited to White and White's Wife from:

        1. Transferring, conveying, selling or encumbering the Sewer Franchise from the Town of Lake View (the "Sewer Franchise"), the sewer collection system from the residences and businesses in and around the Town of Lake

View to ECO's wastewater treatment plant (the "Sewer Collection System"), and/or the land on which ECO's wastewater treatment plant is situated;

2. Charging ECO for use of the Sewer Franchise, the Sewer Collection System and/or the land on which ECO's wastewater treatment plant is situated;

3. Taking any other actions that obstruct, hinder, or impede ECO's use of the Sewer Franchise, the Sewer Collection System and/or the land on which ECO's wastewater treatment plant is situated; and

4. Taking any other action or inaction that impedes the continued operation of the Sewer Enterprise, or that impedes Plaintiff or his designees from operating the Sewer Enterprise.

b. Enjoins and restrains Knobloch, Inc. and its agents, servants, employees and attorneys and those in active concert or participation with it including but not limited to White and White's Wife from:

1. Transferring, conveying, selling or encumbering the NPDES discharge permit and/or the sewer discharge pipeline used by ECO from ECO's wastewater treatment plant to the discharge point (the "Discharge Pipeline");

2. Charging ECO for use of the NPDES permit and/or the Sewer Discharge Pipeline;

3. Taking any other actions that obstruct, hinder, or impede ECO's use of the NPDES permit and/or the Sewer Discharge Pipeline;

23

4. Allowing its wholly-owned subsidiary Tannehill Sewer to taking any actions set forth in paragraph a above; and

5. Taking any other action or inaction that impedes the continued operation of the Sewer Enterprise, or that impedes Plaintiff or his designees from operating the Sewer Enterprise.

c. Enjoins and restrains Serma Funding, LLC, and its agents, servants, employees and attorneys and those in active concert or participation with it including but not limited to White and White's Wife from:

1. Transferring, conveying, selling, encumbering, or using any of the funds (currently around $1.8 million) that it holds that belong to ECO;

2. Increasing the interest rate or accelerating the terms paid by ECO under the construction loan it holds or any other loan;

3. Charging ECO for payments currently being paid by ECO under the construction loan it holds or any other loan;

4. Transferring, conveying, selling, or assigning the construction loan with ECO or any other loan it may have with ECO; and

5. Taking any other action or inaction that impedes the continued operation of the Sewer Enterprise, or that impedes Plaintiff or his designees from operating the Sewer Enterprise.

Respectfully submitted this 20th day of June, 2025.

_____
R. Scott Williams
Peter John Tepley
Frederick D. Clarke, III

24

Of Counsel:

RUMBERGER, KIRK, & CALDWELL, P.C.
Renasant Place
2001 Park Place, Suite 1300
Birmingham, Alabama 35203
Telephone: 205.327.5550
Fax: 205.326.6786
Email: swilliams@rumberger.com
Email: ptepley@rumberger.com
Email: fclarke@rumberger.com

### Verification

I, Brian Walding, the Chapter 11 Trustee of the as Chapter 11 Trustee of the Bankruptcy Estates of ECO- Preservation Services, LLC, Serma Holdings, LLC, and J. Michael White state that I have reviewed the factual allegations made in the foregoing Complaint and that such allegations are true and correct to the best of my knowledge, and based (where so indicated) upon my information and belief.

Brian Walding

Sworn to and subscribed before me this 20th day of June 2025.

Rebecca E. Chandler

Notary Public
My Commission expires: 8-30-26

REBECCA ELIZABETH CHANDLER
MY COMMISSION EXPIRES
AUGUST 30, 2026
NOTARIAL SEAL
NOTARY PUBLIC
STATE OF ALABAMA

25

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing electronically through the CM/ECF system and via certified U.S. Mail or personal delivery to the parties listed below on this the 20th day of June, 2025.

_R. Scott Williams_

R. Scott Williams

Richard Aaron Chastain
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Email: achastain@bradley.com

James Blake Bailey
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203
Email: jbailey@bradley.com

Harry P Long
The Law Offices of Harry P. Long, LLC
P O Box 1468
Anniston, AL 36202
Email: hlonglegal8@gmail.com

Serma Holdings
Michael J. White
1505 9th Street
Leeds, AL 35094

Serma Funding, LLC
c/o Serma Holdings LLC
1505 9th Street
Leeds, AL 35094

Knobloch, Inc.
c/o Michael J. White
1509 9th Street
Leeds, AL 35094

Tannehill Sewer, LLC
c/o Serma Holdings, LLC
1505 9th Street
Leeds, AL 35094