## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | Case No. 22-02429-DSC11 |
| ECO-Preservation Services, L.L.C., et al.[1], | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | (Jointly Administered) |

## ORDER ON JUDGMENT CREDITORS' MOTION TO ALTER, AMEND, OR VACATE AND FOR RELIEF FROM ORDER

This case came before the Court on July 16, 2025, for a hearing on the following: (1) Judgment Creditors' Motion to Alter, Amend, or Vacate and for Relief from Order filed by Creditors Benjamin Davis, Lindsay Davis, John Lawrence, Monica Lawrence, Jonathan K. Slone, and Nicole Slone (the "Judgment Creditors") (Doc. 659); (2) Opposition to Motion to Reconsider filed by Knobloch, Inc., Tannehill Sewer, LLC, Serma Funding, LLC, Shandi R. White, and Mary P. White (Doc. 675); (3) Joinder to Opposition to Motion to Reconsider filed by Ben J. Schillaci (Doc. 677); and (4) Judgment Creditors' Reply to Non-Debtor Parties' Opposition to the Motion to Alter, Amend, or Vacate and for Relief from Order (Doc. 678). Proper notice of the hearing was given, and appearances were made on the record.

Having considered the arguments of counsel, both orally and as set forth in the written submissions, the following constitutes the Court's findings of fact and conclusions of law upon which the Motion to Alter, Amend, or Vacate and for Relief from Order (doc. 659) is **GRANTED** in part and **DENIED** in part.

---

[1] The Debtors in these chapter 11 cases include: ECO-Preservation Services, LLC, SERMA Holdings, LLC, and John Michael White, Sr.

**Findings of Fact**

Based on the filings, the testimony, and the documents admitted into evidence, the following constitutes the facts that inform the Court's ruling on the pending motions.

### *Pre-Bankruptcy Proceedings*

ECO-Preservation Services, LLC ("ECO"), Serma Holdings, LLC ("Holdings"), and J. Michael White ("White"; and collectively with ECO and Holdings, "Debtors"), run a sewer collection and treatment enterprise for parts of west Jefferson County and Tuscaloosa County. In 2017, the Debtors were named as defendants in civil lawsuits that were filed the United States District Court for the Northern District of Alabama.[2] These lawsuits, which were separately filed by three families living in the communities serviced by Debtors' sewer system, alleged wrongdoing by the Debtors to include false charges on customer accounts, refusal to answer customers' complaints, shutting off water service, placing liens on customers' homes, and pursuing criminal charges against customers. The cases were consolidated for trial and a jury found the Debtors liable for violating the Due Process Clause of the Fourteenth Amendment as well as committing the state law torts of trespass, nuisance, deprivation of property rights, and outrage. The jury awarded a total $300,009 in nominal and compensatory damages and $4,443,000 in punitive damages.[3]

When presiding over the District Court lawsuits, Judge Coogler surmised the relationship of the entities forming the sewer system as follows: "White sits at the center of a complicated web of private entities that have come to form the bedrock of Lake View's sewer system." (N.D. Ala.

---

[2] For reference, the district court lawsuits are docketed as: No. 7:17-cv-01533-LSC (Davis Family); No. 7:17-cv-01534-LSC (Sloane Family); No. 7:17- cv-01535-LSC (Lawrence Family).

[3] On appeal, the jury's liability verdicts were affirmed and many of the punitive damage awards were left in place; some were remanded for modification consistent with Alabama's statutory cap. *See Davis et al. v. White et. al,* No. 22-12913, (11th Cir. June 6, 2024) (opinion docketed as doc. 67-1).

Doc. 139 at 4.)[4] These entities include the Debtors here, ECO-Preservation Services, LLC, SERMA Holdings, LLC, and as well as other non-debtor entities Tannehill Sewer LLC ("Tannehill"), Knobloch LLC (Knobloch"), and Serma Funding LLC ("SERMA Funding"). The sewer system enterprise is comprised of several components including: the sewer plant, the land on which the sewer plant sits, and the discharge pipeline. There is also a corresponding permit necessary for the sewer system to operate in compliance with federal environmental regulations.[5] Prior to any litigation in the District Court, the parties involved in owning and operating these components included White, Henry Tyler, ECO, Holdings, and Knobloch. During the District Court litigation, however, ownership interests shifted and were realigned; and components of the sewer system enterprise were transferred from the Debtors to non-debtor entities all in an effort, the Judgment Creditors would contend, to render the Debtors judgment-proof.

By way of example, the Judgment Creditors allege that prior to August 2019, Holdings "owned and possessed real estate and sewer system assets" that were all fraudulently transferred during the pendency of the District Court litigation to non-debtor Tannehill. [6] (Doc. 640, Ex. A at ¶¶ 69-70). Another example relates to the land where the treatment plant is located. Originally, Tyler, who held a 40% interest in ECO, owned this land and leased it to ECO. In the original lease, ECO was obligated to pay $650 per month in rent to Tyler and had an option to purchase the land

---

[4] This document is docketed in District Court case No. 7:17-cv-01533-LSC. Judicial notice is taken of the District Court actions and their corresponding dockets pursuant to Federal Rule of Evidence 201(c). *In re Dynamic Tours & Transp., Inc.*, 359 B.R. 336, 342 (Bankr. M.D. Fla. 2006); *see ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[5] The referenced permit is a National Pollutant Discharge Elimination System permit, which has been referred to as the "NPDES" permit during this bankruptcy.

[6] The Court acknowledges that the ownership and validity of the sewer system to Holdings by the GUSC is currently an issue in an ongoing adversary proceeding before this Court, and that no determinations have been made, nor should any statements made within this Order be taken as a determination. (AP 24-00039).

3

for $75,000. Throughout the entirety of the lease, which spanned 21 years, ECO never made a rent payment to Tyler. However, ECO did not purchase the land, and instead the land was purchased by Tannehill Sewer for the $75,000 price. Mr. White is a principal of both ECO and Tannehill Sewer. After the acquisition of the land, Tannehill Sewer restructured the lease and required ECO to pay $4,000 per month in rent—a 650% increase. While ECO never made rent payments of $650 to Tyler, ECO has regularly made the $4,000 rent payments to Tannehill Sewer. To date, ECO has paid far more in rent payments to Tannehill than the cost to purchase the land from Tyler. As this Court has previously recognized, there is an incurable conflict of interest with a single principal, Michael White, on both sides of every major agreement involving ECO. (Doc. 483, Oral Ruling, Dec. 4, 2024.)

### *Bankruptcy Proceedings*

The District Court entered judgment against the Debtors on September 7, 2021, for an amount exceeding $4.7 million. Just over 1 year later, the Debtors filed for chapter 11 bankruptcy protection on October 5, 2022. (Doc. 1.) Following standard court procedure, the Debtors' cases were consolidated into ECO's chapter 11 case given its status as the first filed. (Doc. 61.) However, with the multimillion-dollar judgment against them being the primary reason for filing bankruptcy, no significant progress occurred in the bankruptcy case while the Debtors exhausted their appeals. On June 20, 2024, the Eleventh Circuit affirmed the verdict and decisions of the District Court, and the Supreme Court of the United States denied the Debtors' petition for writ of certiorari on February 25, 2025.

Following the Eleventh Circuit's decision, bankruptcy proceedings began to move forward, and in August of 2024 the Judgment Creditors sought the appointment of a chapter 11 trustee under pursuant to 11 U.S.C. § 1104. (Doc. 384.) After a two-day hearing, the Court granted to the motion

to appoint a chapter 11 trustee. (Doc. 482.) Thereafter, Brian Walding was appointed on December 30, 2024, to serve as the chapter 11 trustee in this case. (Doc. 533.)

Following Mr. Walding's appointment, this chapter 11 case continued to proceed, actively, with frequent court hearings and motion dockets. Notwithstanding the ongoing bankruptcy, on May 27, 2025, the Judgment Creditors filed a lawsuit in Tuscaloosa County, Alabama against entities affiliated with the chapter 11 Debtors here. Those entities included Knobloch, Tannehill, Serma Funding, Mary Paula White, Shandi R. White, and Ben J. Schillaci (individually and as Trustee of the ETDNRE Trust). The state court complaint demanded judgment, the appointment of a receiver under state law, and an ex parte temporary restraining order. (Doc. 640, Ex. A at 17.) The state court granted the temporary restraining order on an ex parte basis. (Doc. 640, Ex. B.) Stay relief was not sought in connection with the Tuscaloosa County litigation.

Soon after the state court complaint was filed, the non-debtor entities filed a Motion to Enforce the Automatic Stay ("Motion to Enforce") (doc. 640) and removed the state court litigation here, pursuant to 28 U.S.C. §§ 1334 and 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure. The removed case is designated in this Court as Adversary Proceeding 25-00019. Ultimately, after hearing arguments from counsel on both sides during an expedited hearing on the Motion to Enforce, this Court entered an oral ruling, later followed by a written order, determining that the Judgment Creditors had violated the automatic stay. The Court made no determinations as to the willfulness of the violation and set that issue out for an evidentiary hearing to be heard on June 9, 2025. (Doc. 646.) The Judgment Creditors asked this Court to reconsider its ruling (doc.659), which this Court heard on July 16, 2025, and took under submission.

5

**Conclusions of Law**

This Court must decide whether to alter or amend its prior Order finding that the Judgment Creditors violated the automatic stay by filing a state court lawsuit against third parties who are not debtors in the instant bankruptcy case but – according to the state court complaint – are part of an "interconnected web of entities" that are "collectively involved [with the debtors] in running a private sewer system in Lake View, Alabama, and surrounding areas." (Doc. 640, Ex. A at ¶ 31). And while the Debtors in this chapter 11 case are not captioned as defendants in the state court complaint, they are conspicuous among the alleged wrongdoers, and a fair reading of the complaint can leave no doubt otherwise. In fact, the state court complaint makes numerous allegations against the debtors including that:

- "**Eco** and **Serma** have misused and mismanaged to divert funds and income into the Whites" (Doc. 640, Ex. A at ¶ 55.)

- "**Eco** and **Serma** are being used by its members to evade personal responsibility for the Plaintiff's judgment, and **Eco** and **Serma** are a mere instrumentality of its members." (Doc. 640, Ex. A at ¶ 56.)

- "As a direct and proximate result of the misuse of control, **Eco** and **Serma** have failed to satisfy the Plaintiff's judgment against them and filed for bankruptcy." (Doc. 640, Ex. A at ¶ 57) (emphasis added).

The complaint also alleges numerous fraudulent transfers from Debtors ECO, Serma, and John Michael White to transferees who are named as defendants in the state court complaint. (Doc. 640. Ex. A at 10-140.) In doing so, the complaint alleges that these chapter 11 debtors "retained possession or control of the property *even after* the transfer." (Doc. 640, Ex. A at ¶ 92) (emphasis added). And because of the Debtors' alleged wrongdoing, the state court complaint sought "judgment avoiding the transfers to the extent necessary to satisfy the Plaintiff's claim" and appointment of a "receiver to take charge of the asset transferred" among other relief. (Doc. 640,

6

Ex. A at 17.) The Judgment Creditors also sought, and obtained, an ex parte temporary restraining order in Tuscaloosa County Circuit Court in conjunction with filing the state court complaint. (Doc. 640, Ex. B.)

Despite the state court defendants being collectively involved with the Debtors here in "an interconnected web," or the fact that numerous allegations of wrongdoing are asserted against the Debtors in the state court complaint, or even that the state court complaint sought appointment of a receiver "to take charge over assets" that the Debtors possess and use in day-to-day operations of a sewer system, the Judgment Creditors did not seek stay relief from this Bankruptcy Court before proceeding in Tuscaloosa County Circuit Court. Their rationale for not doing so posits a theory (which is unsubstantiated by the Bankruptcy Code) that the automatic stay is dissolved by implication when the limitations period runs on a trustee's avoiding powers under 11 U.S.C. § 546(a)(1). As discussed below, the Court is unpersuaded that the automatic stay – as integral a component to bankruptcy jurisprudence as there is – could go so quietly in the night. For these reasons, the Court affirms its prior Order that a stay violation occurred. Upon reconsideration, however, the Court will alter and amend the Order to reflect, as set forth below, that the automatic stay could not be enforced by non-debtor, third parties, who fall outside the zone of interests for stay protection, namely, Mary Paula White, Shandi R. White, and Ben J. Schillaci (individually and as Trustee of the ETDNRE Trust).

### *Jurisdiction*

As an initial matter, the determination of "what constitutes property of the estate and what actions are permitted or prohibited by the stay" falls under the exclusive jurisdiction of the bankruptcy court. *In re Elrod*, 523 B.R. 790, 804 (Bankr. W.D. Tenn. 2015). To that end, "[i]t is

well established that proceedings to determine what constitutes property of the bankruptcy estate under section 541(a) of the Bankruptcy Code are core proceedings." *In re Willingham*, 2013 WL 12461137, No. 3: 11-BK-1002-JAF, *1 *3 (Bankr. M.D. Fla. Feb. 15, 2013), citing *In re Point Blank Solutions, Inc.*, 449 B.R. 446, 449 (Bankr. D. Del. 2011). Moreover, the non-exclusive examples of "core" proceedings listed in § 157 include "motions to terminate, annul, or modify the automatic stay." 28 U.S.C. § 157(b)(2)(G). By extension, "motions to *enforce* the automatic stay are [also] core proceedings." *See In re James*, 120 B.R. 802, 809 (E.D. Pa. 1990), *rev'd on other grounds*, 940 F.2d 46 (3d Cir. 1991). And while a violation of the automatic stay is not specifically identified as a core proceeding under 28 U.S.C. § 157, "any rights arising from a violation of the automatic stay are substantive rights created by the Bankruptcy Code and are thus quintessentially core matters." *In re Walker*, 551 B.R. 679, 686 (Bankr. M.D. Ga. 2016) (citations omitted). Indeed, "[c]ore proceedings embrace those matters traditionally within the jurisdiction of that bankruptcy court, in that they relate to the administration of the bankruptcy estate. The automatic stay, a creature peculiar to federal bankruptcy law, plays a fundamental role in the administration of the Bankruptcy Code." *In re Elegant Concepts, Ltd.*, 67 B.R. 914, 917 (Bankr. E.D.N.Y. 1986) (citations omitted).

### The Automatic Stay

"The automatic stay is among the most fundamental debtor [and creditor] protections in bankruptcy law and its scope in protecting debtors and debtor property is broad." *Cousins v. CitiFinancial Mortg. Co.* (*In re Cousins*), 404 B.R. 281, 286 (Bankr. S.D. Ohio 2009). The legislative history of 11 U.S.C. § 362 articulates the purpose of the automatic stay:

> It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a

repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of their claims in preference and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure in which all creditors are treated equally.

H.R. Rep. No. 95–595 (1977) and S. Rep. No. 95–989 (1978).

Further, as it relates to the instant matter, a "primary purpose of the automatic stay provision is to afford debtors in Chapter 11 reorganizations an opportunity to continue their businesses with their available assets." *In re Rush-Hampton Industries, Inc.*, 98 F.3d 614, 616–17 (11th Cir. 1996) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 183 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News at 6144). To that end, "[b]ankruptcy's embracive automatic stay stops even nonjudicial efforts to obtain or control the debtor's assets." *Ritzen Group, Inc. v. Jackson Masonry, LLC,* 589 U.S. 35, 45 (U.S. 2020) (citing § 362(a)). Also of relevance here is the Eleventh Circuit's recent surmisal that "the filing of the bankruptcy petition also triggers an automatic stay to shield the estate from collateral litigation. 11 U.S.C. § 362(a)." *In re Rajesh C. Patel*, 142 F.4th 1313, 1320 (11th Cir. 2025).

The only exceptions to the automatic stay are found in 11 U.S.C. § 362(b). None of these exceptions apply here, however. In the 2005 amendments to the Bankruptcy Code, Congress added subsections (b)(19)-(28) as additional exceptions under 11 U.S.C. § 362(b). Another exception to the automatic stay, (b)(29), was added in the 2020 amendments. There is, however, no § 362(b) stay exception based on the expiration of the statute of limitations in 11 U.S.C. § 546 for a trustee to bring an avoidance action. And despite being adept at doing so, Congress has not amended § 362(b) to include such an exception.

9

## Who May Enforce the Automatic Stay?

Mindful of the purposes of the automatic stay, this Court must decide as a threshold matter whether the state court defendants, who are neither Debtors nor the Trustee, may enforce the automatic stay or seek redress for violations thereof. This requires considerations associated with standing and statutory interpretation.[7] To make these assessments, the Court considers the state court defendants who have moved to enforce the stay and seek redress for its violation as two distinct groups: (1) the sewer system defendants and (2) the individual defendants. The sewer system defendants include Knobloch, Inc., Tannehill Sewer, LLC, and Serma Funding, LLC. The individual defendants include state court defendants Mary Paula White, Shandi R. White, and Ben Schillaci (individually and as Trustee for the ETDNRE Trust). Having considered (and reconsidered) arguments from both sides on the issue of who may enforce the stay, the Court concludes that the sewer system defendants may enforce the automatic stay, but the individual defendants may not. This conclusion draws a dividing line; it is informed by the facts and circumstances unique to this case, and by pragmatism—all to effectuate the purpose of the automatic stay and the aim of reorganization.

As a starting point, a few general propositions provide context for concluding that the sewer system defendants may enforce the stay while the individual defendants may not. First, "[a]s evidenced by the statutory language and the legislative history, the automatic stay is primarily designed to protect the debtor and the bankruptcy estate, and its protections do not often extend

---

[7] Preliminarily, regarding standing, the Court finds that the "sewer system" defendants have established Article III standing – they have incurred costs both in defending the state court litigation and in attempting to enforce the automatic stay here. These injuries are a direct result of the Judgment Creditors filing the Tuscaloosa County lawsuit and are redressable by this Court declaring, as void, the claims asserted against them. Even if the "individual" defendants have Article III standing for these same reasons, however, this irreducible constitutional minimum does not answer whether they also have a right to enforce 11 U.S.C. § 362.

Case 22-02429-DSC11    Doc 699    Filed 08/28/25    Entered 08/28/25 16:31:43    Desc
Main Document    Page 10 of 27

directly to non-debtor third parties." *In re Tamarack Development Associates, LLC*, 611 B.R. 286, 295 (Bankr. W.D. Mich. 2020). Second, non-debtor third parties, for whom the protections of the automatic stay are often extended, include creditors. Indeed, one of the purposes of the automatic stay is "to protect creditors in a manner consistent with the bankruptcy goal of equal treatment," which means "protect[ing] all creditors by ensuring that the estate will be preserved against attempts by other creditors to gain an unfair advantage with respect to the payment of claims." *Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1069 (5th Cir.1986); *In re McKeever*, 567 B.R. 652, 661 (Bankr. N.D. Ga. 2017) (citations omitted). To this end, "[c]ourts have consistently held that creditors do have standing to seek enforcement of the automatic stay." *In re Cole*, 552 B.R. 903, 910 (Bankr. N.D. Ga. 2016); *see also St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 545 (5th Cir. 2009) (holding that "based on § 362(k)'s plain language, its legislative history, the Bankruptcy Code's purposes, and the weight of judicial authority," prepetition creditors had standing to assert a stay violation claim). Finally, non-debtor, non-creditor, third parties, however, are not within the zone of interests the automatic stay was intended to protect.[8] *See In re Nilhan Developers, LLC*, 622 B.R. 795, 802, N.D. Ga. 2020).

In the instant matter, all of the sewer system defendants are creditors, and, in that capacity, they certainly belong to a group for whom courts have extended protections of the automatic stay.[9]

---

[8] In accord with the Supreme Court's decision in *Lexmark*, 572 U.S. 118 (2014), the Court considers the zone of interest test not as an aspect of prudential standing, but as a tool of statutory interpretation to aid in deciding whether the sewer system defendants or the individual defendants are within a class 11 U.S.C. § 362 is intended to protect. *Lexmark*, 572 U.S. at 127, citing *Association of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675-76 (D.C. Cir. 2013) (concurring opinion) ("As Judge Silberman of the D.C. Circuit recently observed 'prudential standing' is a 'misnomer' as applied to the zone-of-interests analysis, which asks whether 'this particular class of person ha[s] a right to sue under the substantive statute.'")

[9] Tannehill Sewer filed proof of claim no. 15 in the amount of 11,400, claim no. 16 in the amount of $16,336.84, and claim no. 17 in the amount of 4,000. Serma Funding filed proof of claim no. 18 in the amount of $1,125,000 Knobloch filed proof of claim no. 19 in the amount of $12,278.25.

11

Even if creditor status is not enough to afford the sewer system defendants the right to enforce the § 362 stay, however, this Court is persuaded that stay protection is otherwise justified. To begin, when a claim against a non-debtor will have an immediate and adverse consequence to the debtor's estate, the automatic stay can apply to non-debtors. *See In re Nilhan,* 622 B.R. at 802. The stay may also apply to non-debtors when "allowing litigation against non-debtors to proceed could adversely impact the debtor's reorganization efforts." *Raudonis as trustee for Walter J. Raudonis 2016 Revocable Trust v. RealtyShares, Inc.*, 507 F.Supp.3d 378, 383 (D. Mass. 2020); *see Gray v. Hirsh,* 230 B.R. 239, 243 (S.D.N.Y. 1999) ("The broader rule here is that a debtor's stay may extend to a non-debtor only when necessary to protect the debtor's reorganization."). Due to the nature of the relationship between the Debtors and the sewer system defendants—aptly described in the state court complaint as an "interconnected web of entities"—an immediate and adverse consequence to the estate and reorganization efforts is likely if collateral litigation were to proceed against the sewer system defendants. And the reality of how each sewer system defendant operates and co-exists, and ECO's dependence on the same, evinces as much. For example, Tannehill Sewer is an entity that "holds multiple assets that are necessary" for debtor ECO's daily operation, including the "land upon which ECO's wastewater treatment plant is situated." (AP 25-00024, Doc. 1 at ¶ 92.) The sewer system defendants also include Knobloch. Knobloch "holds multiple assets necessary" for debtor ECO's daily operation, in particular the NPDES permit and the sewer discharge pipeline. (AP 25-00024, Doc. 1 at ¶ 105.) Finally, the sewer system defendants include Serma Funding. Serma Funding is alleged to "hold[] approximately $1.8 million of funds that belong to ECO." (AP 25-00024, Doc. 1 at ¶ 105.) [10] Interconnected, indeed; so much so that this

---

[10] Citations to AP 25-00024, are made in reference to the Adversary Proceeding commenced by the chapter 11 trustee. Specifically, allegations from the Trustee's verified complaint are referenced in this paragraph. These allegations have either been admitted by the sewer system defendants in their Answer (AP 25-00024, Doc.21. ¶¶ 92, 105) or, if not, the Court has regarded them as an allegation only.

12

Court is hard-pressed to conceive how an action taken against the sewer system defendants would not inevitably and adversely impact the Debtors' estate.

"In effectuating the purpose behind the stay, courts have declined to elevate form over substance." *In re Jefferson County, Ala.*, 491 B.R. 277, 286 (Bankr. N.D. Ala. 2013). Denying stay protection to the sewer system defendants here, however, has the propensity do just that—forsake the purpose of the stay because the sewer system defendants are not chapter 11 debtors. But a starker example, than the case presented here, of how litigation against non-debtors may impact a chapter 11 debtor's reorganization efforts, is difficult to imagine; especially when the components that are essential to the Debtors' delivery of sewer services are targeted as named defendants on the face of the state court complaint.[11] Thus, if "[a] primary purpose of the automatic stay provision is to afford debtors in Chapter 11 reorganizations an opportunity to continue their businesses with their available assets," then staying the litigation against the sewer system defendants certainly comports.

Moreover, state court litigation against the sewer system defendants (seeking, among other relief, the appointment of a "receiver to take charge of" assets that ECO uses in its daily operation) holds the distinct and likely prospect of not only thwarting ECO's reorganization efforts but also disrupting, hindering, and interrupting the delivery of sewer services to west Jefferson County and Tuscaloosa County, including the Town of Lake View. The Court views this potential environmental risk as untenable. And it must put the sewer system defendants squarely in the zone of interests the automatic stay is intended to protect. Otherwise, ECO's interests are unprotected. The bankruptcy court in the *In re Jefferson County, Alabama* case surmised that: "The protection

---

[11] During the hearing on July 16, 2025, counsel for the Judgment Creditors argued that his clients had no intention of pursuing the components of the sewer system which are necessary for the ongoing operation of the Debtors' sewage treatment business. While the Court has no reason to doubt Mr. Reynolds's sincerity, the state court complaint filed by the Judgment Creditors, before Reynolds's appearance in this matter, tells an entirely different story.

of the automatic stay extends to any action or proceeding against an interest of the debtor. The scope of this protection is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation." 491 B.R. 277, 286 (Bankr. N.D. Ala. 2013) (internal citations omitted). Here, ECO has a real interest in the state court litigation to the extent that assets essential to its daily operation are effectively included as defendants. And it is in this regard that the Court is persuaded that ECO's interest in property owned by the sewer system defendants constitutes property of the estate under 11 U.S.C. § 541.

Under the Bankruptcy Code, property of the estate includes a debtor's "mere possessory interest." *In re Kappa Development and General Contracting Inc*., 589 B.R. 302, 307 (Bankr. S.D. Miss. 2017), citing *48th St. Steakhouse, Inc. v. Rockefeller Ctr., Inc. (In re 48th St. Steakhouse, Inc.)*, 61 B.R. 182, 187 (Bankr. S.D.N.Y. 1986). And this "'capacious' definition suggests 'that even a debtor's nonpossessory, contingent, partial, derivative, and speculative property interests and causes of action convey to the bankruptcy estate.'" Here, the sewer system defendants (namely, Tannehill and Knobloch) provide ECO with the "real property upon which ECO's treatment plant sits," a collection system, and use of a discharge pipeline. (Doc. 640 at ¶¶ 31, 37, 39, 43, 48.) At a minimum, therefore, the Court is persuaded that ECO has a possessory interest in property targeted in the Tuscaloosa County litigation; indeed, the state court complaint alleges that these chapter 11 debtors "retained possession or control of the property *even after* the transfer." (Doc. 640 at ¶ 92.) As such, ECO's daily use and possession of this real property and assets are interests that this Court regards as property of the bankruptcy estate. Accordingly, the sewer system defendants may enforce the automatic stay.

The same is not true as to the individual defendants. To begin, the individual defendants are neither debtors nor creditors. As such, they are "[n]on-debtor, non-creditor, third parties [that]

14

are not within the zone of interests the automatic stay was intended to protect." *In re Nilhan Developers, LLC*, 622 B.R. 795, 803 (Bankr. N.D. Ga. 2020). And for non-debtor, non-creditor, third parties, like the individual defendants here, they can only claim stay protection in "unusual circumstances." *In re Stewart*, 329 B.R. 910, 914 (Bankr. M.D. Ga. 2005) ("Extension of an automatic stay to a debtor's co-defendants is only proper in unusual circumstances.") (citations omitted). "Unusual circumstances may arise where there is such identity between the debtor and the third party defendant that the debtor may be said to be the real party defendant and a judgment or finding against the third party defendant will, in effect, be a judgment or a finding against the debtor." *In re Nilhan Developers*, 622 B.R. at 803. Here, as to the individual defendants, the Court concludes that these unusual circumstances do not exist. There is no indication that the individual defendants are essential to ECO's reorganization efforts, and the Court does not perceive an adjudication of claims against them as having an immediate, adverse economic impact on ECO. Essentially, none of the justifications for extending the stay to the sewer system defendants (for example, ECO's dependance on assets of the sewer system defendants to continue daily operations) apply to the individual defendants. That being the case, the Court concludes (and amends its prior ruling accordingly) that the individual defendants are not among the parties who may seek enforcement of the automatic stay.

### What Claims or Causes of Actions does § 362(a) stay?

*Fraudulent Transfer Claims*

Having determined who may enforce the stay, the next question is what claims are stayed under § 362(a). There is a "substantial body of case law that stands for the proposition that commencement of bankruptcy stays any state court fraudulent conveyance actions involving a debtor or his transferees." *In re Zwirn*, 362 B.R. 536, 538 (Bankr. S.D. Fla. 2007). As the *Zwirn*

court and others have explained, case law concluding that creditors are stayed from commencing a fraudulent transfer action arrive at that conclusion one of two ways: (1) fraudulent transfer actions are stayed by § 362(a)(1) because they are actions "to recover a claim against the debtor" or (2) fraudulent transfer actions are stayed under § 362(a)(3) as "acts to obtain possession of property of or property from the estate or to exercise control over property of the estate." *See id.* Either way, "***all*** courts appear to agree that commencing a bankruptcy case stays any state court fraudulent conveyance actions by a creditor." *In re Zwirn*, 362 B.R. at 539.

This Court agrees also and concludes that § 362(a)(1) applies here because it "operates to stay a creditor with a claim against the debtor from commencing or continuing a fraudulent transfer action or from utilizing the process of another court . . . to recover that claim from property that should have been available for levy and execution but for the transfer to a third party in fraud of creditors." *In re Saunders,* 101 B.R. 303, 306 (Bankr. N.D. Fla. 1989). Inasmuch as a fraudulent transfer action is a third-party claim, it is also a claim to recover against the debtor. As Judge Killian explained in *Saunders*: "[a]bsent a claim against the debtor, there is no independent basis for the action against the transferee. Moreover, the creditor can only recover property or value thereof received from the debtor sufficient to satisfy the creditor's claim against the debtor." *In re Saunders,* 101 B.R. at 132. The *Saunders* decision, which the Second Circuit followed in *In re Colonial Realty,* 980 F.2d 125 (2nd Cir. 1992), cited the legislative history of § 362(a)(1) as consistent with its interpretation. That history provides that:

> the provision in this first paragraph prohibiting the issuance of process is designed to prevent the issuance of a writ of execution by a judgment creditor of the debtor to obtain property that was property of the debtor before the case *but that was transferred,* subject to the judgment lien, before the case. Because the other paragraphs of this subsection refer only to property of the estate or property of the debtor, *neither of which apply to this kind of transferred property,* they would not prohibit pursuit of the transferred property by issuance s

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 341 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787. 5963, 6297 (emphasis added).

Here, the Judgment Creditors' state court complaint supports the interpretation made by *In re Colonial, In re Saunders,* and other cases – that a fraudulent transfer action is an action "to recover a claim against the debtor" even though it is pled as an action against a third party. Indeed, the complaint is premised upon the Debtors making fraudulent, voidable transfers to become insolvent and move their assets out of the reach of the Judgment Creditors. As pled, the state court lawsuit expressly seeks a judgment "avoiding the transfers to the extent necessary to satisfy the Plaintiffs' claim" against the Debtors. (Doc. 640, Ex. A at ¶ 106.) Further, based on the record thus far in this chapter 11 case, if the Debtors were not liable to the Judgment Creditors for a multimillion-dollar judgment, the Judgment Creditors would have no independent claim against the transferee defendants. Accordingly, the Court concludes that state court fraudulent transfer actions against the sewer system defendants are stayed under § 362(a)(1).

Beyond this conclusion, the Court acknowledges an alternative rationale under § 362(a)(3) for reaching the same conclusion that the stay was violated by the fraudulent transfer action. The Fifth Circuit's *MortgageAmerica* decision applied the different analysis. *In re MortgageAmerica,* 714 F.2d 1266 (5th Cir. 1983). In that case, the Fifth Circuit considered the applicability of the automatic stay to various causes of action, including fraudulent transfers, brought by a creditor against a non-debtor third party based on transactions with the debtor. In doing so, the Court focused on the "key term" used in § 362(a)(3), namely, property of the estate. *In re MortgageAmerica,* 714 F.2d at 1273. Reasoning that § 541(a)(1), which defines property of the estate, "is all-encompassing, and Congress meant for it to be construed commensurately," the Court held that: "We think that when such a debtor is forced into bankruptcy, it makes the most

sense to consider the debtor as continuing to have a "legal or equitable interest[ ]" in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code." *Id.* at 1274. And the debtor having a "legal or equitable interest" in property fraudulently transferred, means the property "even in the hands of a third party, is property of the estate." *In re Saunders*, 101 B.R. at 304, citing *In re MortgageAmerica Corp.,* 714 F.2d at 1275. Accordingly, the automatic stay under § 362(a)(3) applies.

The concept of "property of the estate" manifests itself in two ways as it relates to fraudulent transfers which makes drawing a distinction between the fraudulently transferred *asset* and the fraudulent transferred *cause of action* prudent. *See In re C.D. Jones*, 482 B.R. 449, 457 (Bankr. N.D. Fla. 2012). *MortgageAmerica* viewed the debtor as retaining a legal and equitable interest in the actual property/assets that were fraudulently transferred and therefore it considered the fraudulently transferred property as estate property subject to the § 362(a)(3) stay. In this regard, the *Saunders* court and others, including the Second Circuit in *Colonial Realty,* disagree; finding, that "[u]ntil a judicial determination has been made that the property was, in fact, fraudulently transferred, it is not property of the estate." *In re Saunders,* 101 B.R. at 305. While this Court is inclined to view the subject stay violation under the § 362(a)(1) analysis espoused by *Saunders* and *Colonial Realty*, the proposition that the fraudulent transfer claim itself (as opposed to the fraudulently transferred property) constitutes property of the estate merits consideration here.

In a case that considered whether fraudulent transfer *claims* constitute property of the bankruptcy estate on a Trustee's *Motion for Determination of Cause of Action as an Asset of the Estate*, instead of addressing the question in the posture as a stay violation, the Court found that fraudulent transfer claims were property of the estate on day one of the bankruptcy case. *See In re*

*C.D. Jones*, 482 B.R. at 449. Specifically, the Court held that if the claims were, in fact, fraudulent transfer claims that would have been available to creditors prepetition "then they constitute property of the Estate as of the date of the petition by virtue of 11 U.S.C. § 544 and any recovery of such claims constitutes property of the estate under Section 541;" thus, "the right to recovery any such fraudulent transfers is property of the bankruptcy estate." *Id.* at 455-56. In the *Zwirn* case, 362 B.R. 536 (Bankr. S.D. Fla. 2007), the court also held that fraudulent transfer claims were property of the estate outside the specific context of a stay violation. Indeed, *Zwirn* holds that the "better, well-reasoned approach is to conclude that [fraudulent transfer claims] are property of the estate as of the petition date . . ." *In re Zwirn,* 362 B.R. at 539.

Irrespective of the approach — § 362(a)(1) or § 362(a)(3) — or which "property of estate" theory facilitates the approach, many, if not all, "courts appear to agree that commencing a bankruptcy case stays fraudulent conveyance actions by a creditor." *In re Zwirn*, 362 B.R. at 539. And like others before it, this Court is persuaded that doing so furthers the intention of the automatic stay from a pure policy standpoint. Indeed, "[t]his result also does the most to further the fundamental bankruptcy policy of equitable distribution among creditors." *In re MortgageAmerica,* 362 B.R. at 540. Further, "[a]ny other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served. Even without the Bankruptcy Code and the policies that support it, we would be reluctant to elevate such a principle to a rule of law." *Id.* at 1275-76.

*Veil-Piercing, Alter-Ego, Civil Conspiracy*

In addition to the fraudulent transfer claims, the state court complaint asserts claims for piercing the corporate veil, alter-ego, and civil conspiracy. Turning first to the corporate veil and alter-ego claims, the Court concludes that these claims are not automatically stayed. As articulated

19

by Judge Mahoney in the *Cello* case, "commencement of this bankruptcy case does not grant the [Trustee] a cause of action that was not available to the pre-bankruptcy corporation." *In re Cello*, 2011 WL 1332292 at *5. With that principle in mind, staying the veil piercing and alter-ego claims against the sewer system defendants here would mean that the Debtors could bring their own veil-piercing and alter ego claims. *In re Cello Energy, LLC,* 2011 WL 1332292, No. 10-4877, at *1, *4 (Bankr. S.D. Ala. Apr. 7, 2011). To that end, state law is implicated. Indeed, state law creates and defines property interests, "while federal law determines whether an interest is property of the bankruptcy estate." *Id.* citing *In re Witko,* 374 F.3d 1040, 1043 (11th Cir. 2004). In deciding whether an alter ego claim could be maintained by a bankruptcy trustee, the Second Circuit explained the concept as follows:

> We agree with those courts that have held that the determination of whether a claim may be brought by a creditor of a bankrupt corporation outside of the bankruptcy proceedings depends on an analysis of state law. Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded, *inter alia,* on the rights of the debtor and on certain rights of the debtor's creditors, *see, e.g.,* 11 U.S.C. §§ 541, 544, 547 (1982 & Supp. V 1987). Whether the rights belong to the debtor or the individual creditors is a question of state law.

*St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc*., 884 F.2d 688, 700 (2d Cir. 1989) (citations omitted).

"Generally, courts that allow the trustee or debtor-in-possession to bring an exclusive alter ego action do so under section 541." *In re Icarus Holding, LLC*, 391 F.3d 1315, 1319 (11th Cir. 2004). And "[b]efore allowing a debtor-in-possession or trustee to bring an alter ego action on behalf of the corporation, most courts require that (1) the alter ego claim be a general claim that applies equally to all creditors, and (2) state law allows the corporate entity to bring an alter ego action against its principal." *In re Icarus Holding*, 391 F.3d at 1319–20. Consistent with this approach, the court in *Cello Energy* applied "§ 541 in determining whether an alter ego action

20

[was] property of the bankruptcy estate" within the context of an Alabama bankruptcy case. *In re Cello Energy, LLC,* 2011 WL 1332292, No. 10-4877, at *4. In doing so, the court specifically considered "whether, under Alabama law, a representative of a debtor corporation can bring an alter ego claim against the corporation's former principal." *Id.* Finding "no indication that Alabama courts have considered extending the veil-piercing doctrine" and recognizing, instead, that "Alabama courts appear to retain a reluctance to pierce the corporate veil," the bankruptcy court was unpersuaded that "Alabama law permits a corporation to pierce its own corporate veil." Accordingly, the court did not stay the corporate veil causes of action. *Id.* at *5.

This Court reaches the same conclusion in the absence of any authority definitively permitting a corporation to pierce its own corporate veil under Alabama law. While the Eleventh Circuit has held that an alter ego claim was property of the estate and subject to the automatic stay, it did so in the context of Georgia law.[12] And "[u]nlike the Georgia courts, there is no indication that Alabama courts have considered extending the veil-piercing doctrine." *In re Cello*, 2011 WL 1332292 at *5. As such, the piercing the veil and alter ego claims, to the extent they can be asserted and pleaded under Alabama law, are not stayed against the sewer system defendants.[13]

As to the civil conspiracy claim, it is stayed to the extent it is based in whole, or in part, upon the fraudulent transfer causes of action that are likewise stayed against the sewer system

---

[12] Notably, Georgia law on the issue was clarified by the Georgia Supreme Court on a certified question that asked, precisely, "will Georgia law allow the representative of a debtor corporation to bring an alter egal claim against the corporation's former principal?" *Baillie Lumber Co., LP v. Thompson*, 413 F.3d 1293, 1295 (11th Cir. 2005).

[13] The Court acknowledges the arguments made on behalf of the sewer system and individual defendants regarding the nonviability of alter ego and veil-piercing claims under Alabama law; namely, that they are not independent causes of action under Alabama law, only theories of recovery. (Doc. 675 at 20-22.) The Court is also aware of the preemption argument these defendants posit. (Doc. 675 at 22-23.) While the nondebtor defendants may ultimately prevail on either or both arguments, the Court is not persuaded that they are determinative at this juncture, in terms of resolving whether those claims are stayed by the instant bankruptcy case.

21

defendants. Thus, to recap, the fraudulent transfer and civil conspiracy claims are stayed against the sewer system defendants. All remaining claims against the sewer system defendants (veil-piercing and alter ego) will be adjudicated, along with the claims asserted against the individual defendants, by this Court in Adversary Proceeding 25-00019-DSC.[14]

**<u>Was the Automatic Stay Dissolved by Implication?</u>**

The crux of this Court's ruling is premised upon the stay under § 362 being *automatic* – "[i]t is effective upon the filing of the petition and need not, in theory, be requested by anyone." *Bank of Boston v. Piscatelli,* 596 A.2d 27, 30 (Conn. Super. Ct. 1991). As it relates to this case, the automatic stay does not mean that this bankruptcy case necessarily prohibited the state court litigation *in toto* but, at the very least, it does mean that stay relief should have been sought in some regard. This is especially true given that the instant bankruptcy filing was no surprise to the Judgment Creditors who commenced the Tuscaloosa County litigation – indeed, they have been on this long and winding road for what must seem like an eternity. If stay relief had been sought, or if it is sought in the future, it affords (among many other things) this Court the opportunity, within the parameters of the Bankruptcy Code, for prospective consideration of competing interests instead of evaluating those interests on the back end of a stay violation. Notwithstanding, the Judgment Creditors contend that seeking stay relief was unnecessary and justified by expiration of the limitations period under 11 U.S.C. § 546(a)(1).

Section 546(a) imposes time limits on the trustee's avoiding powers including the trustee's power to commence a state law fraudulent conveyance action under § 544(b). It is undisputed that this limitations period had expired at the time the Judgment Creditors filed the Tuscaloosa County lawsuit. Indeed, the § 546 statute of limitations ran prior to the Trustee's appointment in this case.

---

[14] As noted *supra* p. 5, the Tuscaloosa County lawsuit was removed to this Court on June 4, 2025, collectively by the sewer system defendants and the individual defendants.

The question presented, therefore, is not whether the statute of limitations ran—it did. The question is whether this expiration also means the stay lifted automatically. The Judgment Creditors posit that "the stay of these causes of action was lifted once the statute of limitations expired under § 546." (Doc. 659 at 8.) This line of thinking necessarily means that one of the most prominent features of bankruptcy jurisprudence—the automatic stay—is dissolved by implication. Notwithstanding, the Judgment Creditors advance a "reversion theory" as effectuating such an outcome. Under the reversion theory, which some courts espouse, fraudulent transfer claims "automatically revert" to creditors when the limitation on the trustee's avoidance action expires. *In re Tribune Co. Fraudulent Conveyance Litigation*, 499 B.R. 310, 322 (S.D.N.Y. 2013); *see also*, *Integrated Agri*, 313 B.R.419, 427-28 (C.D. Bankr. Ill. 2004 ("A creditor regains standing to pursue a state law fraudulent conveyance action, in its own name and for its own benefit, once the statute of limitations expires on the bankruptcy trustee's right to bring the claim"); *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993)("The trustee's exclusive right to maintain a fraudulent conveyance cause of action expires and creditors may step in (or resume actions) when the trustee no longer has a viable action.") Even if the reversion theory carries the day here (which it does not), this Court is unpersuaded that it also justifies a conclusion that the § 362 stay is lifted, automatically, upon expiration of the statute of limitations.

Turning first to the problems with the reversion theory itself, the Judgment Creditors rely on *In re Tribune Co. Fraudulent Conveyance Litigation*, 499 B.R. 310 (S.D.N.Y. 2013), for the "proposition that once the statute of limitations expires under § 546, the fraudulent conveyance claims automatically revert to the creditors for them to pursue on their own and for their own benefit without violating the automatic stay." (Doc. 659 at 9.) While this case does advance that "when the two-year limitation on trustee avoidance claims expires, the claims automatically

revert," reliance on *Tribune* is nonetheless problematic. On appeal, the Second Circuit found "no support in the language of the [Bankuptcy] Code" for the reversion theory, explaining that:

> . . . the inference of a reversion of fraudulent conveyance claims to creditors drawn from Section 544's statute of limitations is not based on the language of the Code, which says nothing about the reversion of claims vested in the trustee et al. by Section 544. Statutes of limitation usually are intended to limit the assertion of stale claims and to provide peace to possible defendants, <u>Converse v. Gen. Motors Corp.</u>, 893 F.2d 513, 516 (2d Cir. 1990), and not to change the identity of the authorized plaintiffs without some express language to that effect. A decisive part of appellants' legal theory thus has no support in the language of the Code.
>
> Even if this gap is assumed not to exist, or can be otherwise traversed, appellants' theory encounters other serious problems. Section 544, vesting avoidance powers in the trustee et al., is intended to simplify proceedings, reduce the costs of marshalling the debtor's assets, and assure an equitable distribution among the creditors. See <u>In re MortgageAmerica Corp.</u>, 714 F.2d 1266, 1275-76 (5th Cir. 1983) (noting that "[t]he 'strong arm' provision of the [Bankruptcy] Code, 11 U.S.C. § 544, allows the bankruptcy trustee to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors, not just those who win a race to judgment" and Section 362 helps prevent "[a]ctions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws [that] would interfere with [the bankruptcy] estate and with the equitable distribution scheme dependent upon it"). However, these purposes are hardly consistent with the process hypothesized by appellants.

*In re Tribune Company Fraudulent Conveyance Litigation*, 946 F.3d 66, 85, 86 (2d Cir. 2019).

Further, the *Tribune* facts are distinguishable from those here; namely, the *Tribune* bankruptcy court granted stay relief concerning the state law fraudulent conveyance claims on three occasions and the confirmed reorganization plan expressly allowed creditors to pursue actions under state fraudulent conveyance law. *In re Tribune,* 946 F.3d at 77. Beyond this distinction, and the weaknesses of the reversion theory detailed by the Second Circuit, this Court is generally unconvinced that the expiration of a statute of limitations lifts the stay without any statutory mandate. *Flores v. Hagobian,* 2007 WL 1792257, No. 1:04-cv-6405, at *1, *3 (E.D. Cal. June 19, 2007) ("[T]he Court disagrees that the passing of the statute of limitations set forth in 11

24

U.S.C. § 546(a) operates to lift a bankruptcy stay. The passing of the two year statute of limitations found in 11 U.S.C § 546(a) is not listed in 11 U.S.C § 362(c) as one of the events that concludes an automatic stay."). Certainly, Congress knows how to amend § 362 if it intends to; indeed, the 2005 amendments amended § 362 in numerous respects including the addition of several exceptions to the automatic stay under § 362(b). Section 362, however, has not been amended to include the passing of the limitations period of 11 U.S.C. § 546(a) as an exception to automatic stay.

Finally, to the extent that the Judgment Creditors' arguments necessarily advance the proposition that the running of the statute of limitations deprives the Trustee of standing to prosecute the fraudulent transfer actions, this Court is also unpersuaded. Indeed, a statute of limitations is an affirmative defense, not a jurisdictional bar. *See In re C.D. Jones & Co.*, Inc., 482 B.R. 449, 459 (Bankr. N.D. Fla. 2012) (holding that "[t]he Section 546 time limitation is not a jurisdictional bar to the Trustee asserting fraudulent conveyance claims; rather it is an affirmative defense available to the fraudulent transfer defendants to be raised in the state court in the event that the Trustee seeks to proceed."); *see also In re Zwirn*, 362 B.R. at 541 ("statutes of limitations are not jurisdictional, but are merely affirmative defenses which, if not raised, can be waived."). In all, therefore, the Court is unpersuaded that the § 362(a) stay was automatically lifted or dissolved by implication upon expiration of a limitations period under § 546(a)(1).

## CONCLUSION

As is often the case in this forum, parties who understandably view themselves as innocent bystanders are drawn into bankruptcy through no election of their own. The Judgment Creditors certainly fit this description—they have a multimillion-dollar judgment (which has been upheld on appeal) for which they cannot collect because the liable entities filed for bankruptcy after their

application for garnishment and execution of the judgment was filed. Couple that with the fact that the jury verdict, which was returned in their favor, occurred almost four years ago and the Judgment Creditors' suspect fraudulent transfers, among other things, have transpired to keep them from collecting it, and it is not difficult to understand their frustration. Notwithstanding, the automatic stay is fundamental to bankruptcy and its purpose cannot be compromised. To effectuate the purpose of the automatic stay, therefore, this Court concludes that the fraudulent transfer and civil conspiracy claims commenced in state court against the sewer system defendants violated the automatic stay. As such, those claims are void, and they cannot be pursued unless stay relief is granted by this Court. The alter-ego and veil piercing claims are not stayed against the sewer system defendants, nor are the protections of the automatic stay extended to the individual defendants. This result, in this Court's estimation, is required by the Bankruptcy Code and is consistent with its expectations.

Therefore, it is **ORDERED, ADJUDGED**, and **DECREED** that the Judgment Creditors' Motion to Alter, Amend, or Vacate and for Relief from Order (doc. 659) is **GRANTED** in part and **DENIED** in part. Consistent with Rule 9023 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 59(e) of the Federal Rules of Civil Procedure, this Court hereby amends its Order of June 4, 2025 (doc. 646), with the following terms:

1.       The claims asserted under state law by the Judgment Creditors against the sewer system defendants (Knobloch, Inc.; Tannehill Sewer, LLC; and Serma Funding, LLC) for fraudulent transfer and civil conspiracy were commenced in violation of the automatic stay in this chapter 11 case. These claims are void and cannot be pursued unless stay relief is granted by this Court.

Case 22-02429-DSC11    Doc 699    Filed 08/28/25    Entered 08/28/25 16:31:43    Desc
Main Document      Page 26 of 27

2. The alter-ego and veil piercing claims against the sewer system defendants are not stayed, and these claims will proceed as a complaint removed to this Bankruptcy Court under Adversary Proceeding No. 25-00019-DSC.

3. The automatic stay is not extended to the individual defendants (Mary Paula White, Shandi R. White, and Ben Schillaci (individually and as Trustee for the ETDNRE Trust)), and the Judgment Creditors' claims against them will also proceed as a complaint removed to this Bankruptcy Court under Adversary Proceeding No. 25-00019-DSC.

4. By separate order, the Court will schedule a hearing to determine whether the Judgment Creditors' stay violation against the sewer system defendants for fraudulent transfer and civil conspiracy were willful, and if so, whether sanctions for contempt are appropriate.

Dated: August 28, 2025.

/s/ D. Sims Crawford

D. SIMS CRAWFORD

United States Bankruptcy Judge