IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ECO-Preservation Services, L.L.C., *et al.*,[1] | ) | Case No. 22-02429-DSC11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**JUDGMENT CREDITORS' MOTION TO ANNUL THE AUTOMATIC STAY OR ALTERNATIVELY FOR RELIEF FROM THE AUTOMATIC STAY**

**COME NOW,** the Creditors, Lindsay and Benjamin Davis, Nicole Slone, and Monica and John Lawrence (collectively, the "Judgment Creditors"), by and through the undersigned counsel, and move this Honorable Court to annul the automatic stay or alternatively grant relief from the automatic stay, and as grounds thereof, the Judgment Creditors state the following:

## BACKGROUND

1. On May 27, 2025, the Judgment Creditors filed a lawsuit in the Circuit Court of Tuscaloosa County, Alabama (the "Lawsuit") against Knobloch, Inc. ("Knobloch"), Tannehill Sewer, LLC ("TS"), SERMA Funding, LLC ("SFD"), Shandi R. White, Mary P. White, Ben J. Schillaci, *inter alia*, (collectively, the "Non-Debtor Parties"). (*See* Doc. 1-1).

2. On June 3, 2025, Non-Debtor Parties, Knobloch, TS, SFD, Mary P. White, and Shandi White filed an emergency motion requesting this Court to enforce the automatic stay. (Doc. 640). Non-Debtor Party Schillaci joined in the motion. (Doc. 644).

3. The Non-Debtor Parties sought the enforcement of the automatic stay through section 362(a)(1) or (3) of the Bankruptcy Code and requested that this Court find that the Judgment

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification or social security number, include: ECO-Preservation Services, L.L.C. (6084), SERMA Holdings, LLC (8211), and John Michael White, Sr. (1996). The Debtors' service address is P.O. Box 679, Leeds, Alabama 35094.

Creditors violated the automatic stay by pursuing state law claims of fraudulent transfers, alter ego, veil piercing, and civil conspiracy in the Lawsuit. (Doc. 640).

4. On June 4, 2025, after a hearing, this Court granted the Non-Debtor Parties' motion and found that the filing of the Lawsuit violated the automatic stay and set a hearing to determine whether the violation was willful and whether damages, costs, or sanctions, if any, should be awarded. (Doc. 646).

5. In its oral ruling, this Court specifically found that the fraudulent transfer claims asserted by the Judgment Creditors in the Lawsuit were property of the Debtor's Estate and the Trustee held the exclusive authority to pursue such claims. (Doc. 645). This Court was silent as to whether the veil piercing and alter ego claims violated the automatic stay, but nevertheless, this Court estopped the Judgment Creditors from pursuing any of the claims asserted in the Lawsuit without further order of the court (hereinafter "Order"). (Doc. 646).

6. The Lawsuit was also removed by the Non-Debtor Parties to this Court and is currently pending before this Court as an adversary proceeding (AP No. 25-00019-DSC) (the "AP"). (Doc. 1 in AP No. 25-00019-DSC).

7. On June 18, 2025, Judgment Creditors filed a Motion to Alter, Amend, or Vacate and Relief from Order requesting relief from the Order. (Doc. 659).

8. Briefing and a hearing ensued, and on August 28, 2025, this Court granted and denied in part the Judgment Creditors' Motion to Alter, Amend, or Vacate and Relief from Order and altered its Order. (Doc. 699). Specifically, this Court permitted the Judgment Creditors to pursue their state court claims against Mary P. White, Shandi R. White, and Ben J. Schillaci. The Court also permitted the Judgment Creditors to continue pursuit of their alter ego and veil piercing claims against the Non-Debtor Parties. On the other hand, the Court still held that pursuing the fraudulent

Page **2** of **18**
Case 22-02429-DSC11    Doc 714    Filed 09/22/25    Entered 09/22/25 13:55:48    Desc
Main Document    Page 2 of 18

transfer claims against Knobloch, TS, and SFD violated the automatic stay and did not permit the Judgment Creditors to pursue such claims without further stay relief from this Court. (Doc. 699).

9. In this present Motion, the Judgment Creditors request this Court to annul the stay granted to Knobloch, TS, and SFD (collectively, "Sewer System Defendants") through the Order or in the alternative, grant relief from stay for the Judgment Creditors to pursue the fraudulent transfer claims against the Sewer System Defendants in accord with the proposed Amended Complaint to the AP, which is attached hereto, incorporated herein by reference, and marked as Exhibit 1.

10. The proposed Amended Complaint would request that Brian Walding, in his capacity as Trustee, be appointed as a receiver, if such an appointment is ordered by this Court. Counsel for the Judgment Creditors has conferred with counsel for the Trustee, and the Trustee does not object to being appointed as receiver, if ordered by this Court.

## ARGUMENT

**I. Sufficient grounds exist for this Court to annul the automatic stay for cause as the Non-Debtor Parties engaged in wrongful conduct and prejudice would otherwise result to the Judgment Creditors.**

"Actions taken in violation of the automatic stay are void and without effect." *Williford v. Williford (In re Williford)*, 294 Fed. Appx. 518, 521 (11th Cir. 2008). "Pursuant to § 362(d)(1), however, on the request of an interested party and after notice and a hearing, the bankruptcy court may annul the automatic stay 'for cause.' An annulment operates retroactively to validate actions taken after the petition for bankruptcy was filed." *Id.* "'[C]ause' within the context of § 362(d) is undefined" and "remains a broad concept which is intentionally flexible." *In re Long*, 564 B.R. 750, 759 (S.D. Bankr. Ala. 2017).

While used in limited circumstances, courts in the Eleventh Circuit have considered several factors when determining whether to annul the automatic stay. *See In re Kelley*, 652 B.R. 570,

571-72 (M.D. Bankr. Ga. 2023); *In re Patel*, 642 B.R. 187, 198 (N.D. Bankr. Ga. 2022); *Sampson v. Est. of Inglett (In re Sampson)*, 2025 Bankr. LEXIS 387, at *10-11, 2025 WL 582810, No. 22-10534, AP No. 23-01004 (S.D. Bankr. Ga. Feb. 21, 2025). *See also Stancil v. Bradley Invs., LLC (In re Stancil)*, 487 B.R. 331, 339 (D.C. Bankr. Ct. 2013). Such factors include: (1) whether the creditor was aware of the bankruptcy petition, (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor, (3) whether the property is necessary for an effective reorganization, (4) whether the court would have granted relief from stay if a motion for relief had been timely filed prior to the violation of the stay, (5) whether failure to grant retroactive relief will cause unnecessary expense to the creditor, and (6) whether the creditor has detrimentally changed its position on the basis of its action." *Patel*, 642 B.R. at 198; *Kelley*, 652 B.R. at 572.

The court in *In re Patel* found an annulment to be the appropriate relief when it found that the debtor engaged in wrongful conduct, even though the creditor knew of the bankruptcy case when it took actions that violated the automatic stay. *Patel*, 642 B.R. at 202.[2] In the *Patel* case, a failed hotel business resulted in multiple judgments being entered against the debtor prior to the debtor's bankruptcy filing. *Id.* at 190. As a result, the debtor transferred all of his assets out of his name 8 years prior to filing bankruptcy and did not acquire any other assets. *Id.* Disputes arose between the debtor and others that were involved in the hotel business and said disputes ended up in arbitration. *Id.* at 190-91. The debtor filed a chapter 7 bankruptcy proceeding several months after the arbitration proceedings were initiated. *Id.* Thereafter, the arbitrator held a conference call with the parties to the arbitration to discuss the effect of the automatic stay on the non-debtor

---

[2] The order granting relief from the stay was ultimately affirmed by the Eleventh Circuit. *See Rajesh C. Patel v. Rishi M. Patel (In re Rajesh C. Patel)*, 142 F.4th 1313 (11th Cir. 2025). The Eleventh Circuit also noted the "gamesmanship" of the debtor that was picked up on by the bankruptcy court. *Id.* at 1316.

Page **4** of **18**

parties involved in the arbitration and requested counsel for the parties to submit legal research on this topic. *Id.* at 190-91. Counsel for some of the parties involved in the arbitration submitted legal research supporting the position that the arbitration could proceed against the non-debtor parties as "the bankruptcy only acts as a stay as to the [Debtor]." *Id.* at 191 (edits in original). No relief from stay was ever requested and it was the intent of the parties not to pursue claims against the debtor. *Id.* at 191-92. The arbitration proceedings commenced, and although the debtor pursued his claims against other parties, the other parties did not pursue their claims against the debtor. *Id.* at 192-93.

After the arbitration concluded, the arbitrator entered an award in favor of some of the parties and against other parties which was vaguely defined to include the debtor. *Id.* at 193-94. A series of petitions and brief filings ensued in an attempt to void the arbitrator's award and, relevantly, the debtor filed a motion to enforce the automatic stay in the bankruptcy court. *Id.* at 189, 195-96. The creditor responded by filing a motion to annul the automatic stay. *Id.* at 189, 195-96. After a hearing, the court first concluded that the arbitration award on its face violated the automatic stay as it included an award against the debtor. *Id.* at 198-99. However, the court found proper grounds to annul the stay and validated the arbitration award. *Id.* at 199.

In doing so, the court went through the various factors as stated above. The court first dealt with the knowledge of the creditor of the bankruptcy case. *Id.* at 199. While the creditor in the *Patel* case knew of the bankruptcy case, the creditor did not intentionally disregard the automatic stay. As a result, the court did not weigh this factor against the creditor. *Id.* at 200. Likewise, the Judgment Creditors in this case, while knowing about the bankruptcy case, did not intend to violate the stay. Rather, the Judgment Creditors relied upon case law that provided that once the statute of limitations runs on § 544 claims, those claims automatically revert back to the creditors to

pursue such claims on their own and in state court without violating the automatic stay. *See In re Integrated Agri., Inc.*, 313 B.R. 419, 427-28 (C.D. Bankr. Ill. 2004); *In re Tribune Co. Fraudulent Conveyance Litig.*, 499 B.R. 310, 321 (S.D.N.Y. 2013) (hereinafter "*Tribune Co.*"), *aff'd on other grounds by In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66 (2d. Cir. 2019) (hereinafter "*Tribune II*"). This is compounded by 11 U.S.C. § 362(c)(1) which provides: "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate" and 11 U.S.C. § 362(b)(24) that provides that transfers that are not avoidable under § 544 are not protected by the stay. The fraudulent transfers identified by the Judgment Creditors in their state court complaint became transfers that are not avoidable under § 544 as the limitations period for which to bring these claims expired.[3]

While this Court ultimately was not persuaded by this authority and reasoned that *Tribune II* correctly held that the reversion theory is not supported by the bankruptcy code, the Judgment Creditors nevertheless were acting in reliance upon this case law and statutory law, especially in light of the fact that jurisprudence within the Eleventh Circuit was silent to the application of the reversion theory. Further, the Judgment Creditors' conduct cannot be perceived as an intentional disregard of the automatic stay when other courts gave little to no effect to the court's reasoning in *Tribune II* concerning the reversion theory. *See IIG Global Trade Fin Fund Ltd. v. Int'l Inv. Grp. (In re IIG Global Trade Fin. Fund Ltd.)*, 666 B.R. 38, 79 (S.D. Bankr. N.Y. 2024) ("Ultimately, however, the [*Tribune II*] Court determined that it did not need to resolve issues as to whether claims 'reverted' to creditors. Nor did it need to 'issue a decision that affects fraudulent

---

[3] While the Judgment Creditors recognize that this limitations period of § 546 could be waived by the Non-Debtor Parties, the likelihood of such waiver is scant, and the Non-Debtor Parties have yet to indicate they would be amendable to such a waiver. In fact, the Non-Debtor Parties affirmatively raised the defense of statute of limitations in their answer to the Trustee's Complaint concerning the fraudulent transfers and cited directly to § 546. (Doc. 11, p. 9 in No. 25-00033-DSC).

conveyance actions brough by creditors whose claims are not subject to Section 546(e)'"); *Lariat Cos. v. Wigley*, 2020 WL 5507811 (Minn. Ct. App. Sept. 14, 2020) (noting that the language concerning the reversion theory in *Tribune II* is dicta). As a result, the Judgment Creditors believed they were acting within their rights to assert these claims after the § 546 statute of limitations period expired and never intended to disregard the automatic stay. Thus, this factor should weigh in favor of annulling the stay.

Next, the court in *Patel* found that it would have granted relief from the stay if such relief was requested prior to the violation of the automatic stay. *Id.* The court found that the factors for granting relief from the automatic stay weighed in favor of such relief. *Id.* At this point, it is unclear whether such relief would have been granted in this case. As stated herein in the alternative, the Judgment Creditors are requesting for such relief, and it will be this Court's decision whether to grant or deny such relief.

The *Patel* court then analyzed the next factor: the debtor's conduct. *Id.* at 201. The court found that the debtor's conduct would have resulted in the debtor and his family profiting from the actions which would have been unjust and made a mockery out of the bankruptcy process. *Id.* The court found that the debtor "embarked on a calculated attempt to use the automatic stay to protect his family, usurp the Trustee's ability to liquidate property of the estate, and gain an unfair advantage against the [creditor]." *Id.* The court also found that the debtor took steps years prior to the judgment to become judgment-proof by transferring all of his assets to other family members. *Id.*

In this case, substantially similar facts exist. Prior to the filing of the bankruptcy cases, the Debtors and Non-Debtor Parties conspired to transfer and convey assets out of the Debtors' control and possession for their own profit for the purpose of evading the claims of the Judgment Creditors.

This Court has routinely commented on the control that White had on transactions and contracts between the Debtors and Non-Debtor Parties which detrimentally affected the Debtors, and the Judgment Creditors holding the substantial majority of the debts in this bankruptcy proceeding as well as the other creditors involved in this case. This Court has also recognized such detrimental effects and reduced payments due from the Debtors to the Non-Debtor Parties. (Doc. 36 in No. 25-00024-DSC). The Debtors and Non-Debtor Parties placed themselves in a position to substantially lessen the impact of any judgment against the Debtors. Substantial assets were transferred from the Debtors to the Non-Debtor Parties and thus, placed out of the reach of this Court, as of this moment, and any creditor. These fraudulent transfers have done nothing to benefit the Debtors and have only resulted in White and his family unjustly retaining profits and revenue from the Debtors. Like the debtor in *Patel*, White embarked on this calculated, manipulative, and fraudulent path to protect his family and assets that comprise the sewer system from the reach of the Judgment Creditors and any other creditor. He controlled each transaction between the Debtor and Non-Debtor Parties and concocted them in a manner to harm the Debtors and unjustly enrich the Non-Debtor Parties. Even during the pendency of this bankruptcy proceeding, the Debtors breached their fiduciary duty by failing to take any action to pursue fraudulent transfer claims and effectively allowed the § 546 statute of limitations period to run to the detriment of the Judgment Creditors. The Debtors and Non-Debtor Parties should not be allowed to make a mockery of the bankruptcy process by fraudulently transferring substantial assets to the Non-Debtor Parties which shielded such assets from the claims of the creditors and avoided the oversight of this Court. Thus, this factor weighs heavily in favor of annulling the stay.

      While the prejudice to the creditor that was acknowledged by the court in *Patel* is different from the prejudice to the Judgment Creditors in this case, the prejudice is nevertheless obvious.

*See id.* at 201. The Judgment Creditors would face more prejudice than the creditor in *Patel* as the Judgment Creditors must deal with a statute of limitations issue. In accord with Ala. Code § 8-9A-9(1), (2), a claim for relief related to a fraudulent transfer is extinguished within 10 years after the transfer of real property and within 6 years after the transfer of personal property. As alleged in the state court complaint, the Debtors had been making significant fraudulent cash transfers to the Non-Debtor Parties since 2019. The statute of limitations on these fraudulent transfers expired this year, 2025. Without annulling this automatic stay, the Judgment Creditors would be prejudiced and potentially prevented from pursuing these fraudulent transactions allowing the Non-Debtor Parties to get away with their ill-gotten gains. Such prejudice makes this factor weigh in favor of annulling the stay.

The *Patel* court finally analyzed whether any harm would come to the debtor and bankruptcy estate if the stay was annulled and found that any such harm would be minimal. *Id.* at 201. The court noted that the creditor was not asking for relief that would allow any findings of personal liability against the debtor. *Id.* Likewise, the Judgment Creditors did not seek to impose any liability against the Debtors in this case. While this Court has opined that the Lawsuit would have affected the bankruptcy estate, the Judgment Creditors did not intend to interrupt the operations of the sewer system, take control of any property of the Estate, or impede any action or right of the Trustee. In fact, the Judgment Creditors intend to amend their complaint as a matter of right pursuant to Fed. R. Bankr. P. 7015 and Fed. R. Civ. P. 15, as the AP Complaint has yet to be served upon the Non-Debtor Parties, to clarify any perceived notions of interruptions of the sewer system or assets that comprise the system.[4] The Judgment Creditors never intended to affect the

---

[4] Said amended complaint is attached hereto, incorporated herein by reference, and marked as Exhibit 1.

operations or assets that comprise of the sewer system as doing such would obviously devalue the bankruptcy estate which would have been detrimental to the Judgment Creditors.

The proposed Amended Complaint would further clarify the original Complaint to ensure the AP cannot be interpreted as to thwart the position of the Trustee or interfere with property of the Estate or the operations of the sewer system. The Judgment Creditors request the appointment of the Trustee as the Receiver in the proposed Amended Complaint as such Receiver would be vested with any recovered real property that comprises of any component of the sewer system to further the administration of the Estate by the Trustee. The only perceived impact on the Estate may be the transition period that would take place between divesting the Non-Debtor Parties of their interest in any sewer system real property and vesting said interest and control in the Trustee as the Receiver. Therefore, the pursuit of these claims would have little, if any, effect upon the Estate and would not affect the Debtors at all. As a result, any annulment of the stay would minimally impact bankruptcy estate and not impact the Debtors; therefore, this factor weighs in favor of annulling the stay.

The *Patel* court did not analyze whether the property at issue was necessary for reorganization. The real property that was fraudulently transferred to the Sewer System Defendants (i.e., the collection system and treatment plant site) is necessary for the sale of the Estate property. This real property encompasses necessary parts of the sewer system, and any reorganization or liquidation would require the system to be operated or sold as a whole. As stated above, the Judgment Creditors, to the extent recoverable, would convey any recovered part of the real estate that comprises the sewer system to the Trustee for use and control and for a subsequent sale pursuant to a plan or § 363 sale. Further, as clarified in the Amended Complaint attached hereto, the Judgment Creditors would not interfere with any use of this real property and would suggest

that the Trustee be appointed as the receiver over this real property during the pendency of the litigation. Therefore, while the real property is necessary for a reorganization or liquidation via a sale, the Judgment Creditors would turn over such control and possession to the Trustee, to the extent recoverable, and would not interfere with the functions of the sewer system. On the other hand, the personal property fraudulent transferred to the Sewer System Defendants is not necessary for a successful reorganization. This personal property does not include any component necessary to operate the sewer system. To the extent that any personal property fraudulently transferred is identified to be a necessary component of the sewer system, to the extent recoverable, the Judgment Creditors would convey and transfer any such interest to the Trustee. Therefore, this factor weighs in favor of annulling the stay.

In light of the above, the factors to annul the stay weigh in favor of the Judgment Creditors. The gamesmanship employed by the Debtors and Non-Debtor Parties should no longer be shielded by the automatic stay. The circumstances of this case favor an annulment. Therefore, the Judgment Creditors respectfully request this Honorable Court to grant this motion and annul the stay retroactively to the date of the state law complaint filing (May 27, 2025) and retain jurisdiction of the AP.

II. **Alternatively, the Judgment Creditors request relief from stay to pursue the fraudulent transfer claims against the Sewer System Defendants.**

In the event that this Court does not annul the stay as requested above, the Judgment Creditors, alternatively, request that this Honorable Court grant relief from the stay for the Judgment Creditors to pursue their fraudulent transfer claims against the Sewer System Defendants (Knobloch, TS, and SFD). Like an annulment, the bankruptcy court derives its power to grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d). Again, "cause" under § 362(d)(1) is not defined by the code and several factors have been considered by courts when defining "cause."

*Disciplinary Bd. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1277 (11th Cir. 2013). Such factors include: (1) whether the debtor has acted in bad faith, (2) the hardships imposed on the parties, and (3) pending state court proceedings. *Id. See also Guan v. Ellingsworth Residential Cmty. Ass'n, Inc. (In re Ellingsworth Residential Cmty. Ass'n, Inc.)*, 125 F.4th 1365, 1381 (11th Cir. 2025). The bad faith actions of the Debtors and the Non-Debtor Parties have been addressed above, as well as the hardships imposed on the Judgment Creditors. The Judgment Creditors' fraudulent transfer claims have now been removed to this Court, so the state court proceedings factor is irrelevant. Nevertheless, as stated above, the factors weigh in favor of granting relief from the stay.

Courts within the Eleventh Circuit have denied relief from the stay for creditors to pursue fraudulent transfer claims solely on the basis that these types of claims are generally property of the estate and power to pursue these claims are generally vested with the debtor-in-possession or trustee. *IPayment Inc. v. Couick*, 2017 U.S. Dist. LEXIS 224671, at *3-4, 2017 WL 10821349, No. 5:17-cv-134-RH-GRJ (N.D. Fla. July 28, 2017); *In re Ross*, 1997 Bankr. LEXIS 219, at *4-5, No. 96-4695-3P7 (M.D. Bankr. Fla. Feb. 19, 1997). However, these courts have not analyzed the effects of the expiration of the § 546 statute of limitations period when such power to pursue the fraudulent transfer claims revert to the creditors. *See In re Tessmer*, 329 B.R. 776, 779 (M.D. Bankr. Ga. 2005) ("The creditors do not regain the right to sue unless the trustee abandons the claim or he 'no longer has a viable cause of action' because, for example, the statute of limitations has run."); *Boudreaux v. Hall Oil Co. (In re Butler Logging, Inc.)*, 538 B.R. 174, 182 (S.D. Bankr. Ga. 2015) ("In certain circumstances, creditors may still be able to pursue their state law fraudulent transfer causes of action against non-debtor transferees, such as when the § 546 statute of limitations has expired or the Trustee abandons such claims") (emphasis added); *Carn v. Todd (In re Todd)*, 2019 Bankr. LEXIS 2100, at *7, 2019 WL 3183531 (M.D. Bankr. Ala. July 15, 2019)

("The shorter timeline set forth in § 546 is a mark of exclusivity provided by the Bankruptcy Code. Specifically, the two-year limitation is exclusive to a trustee in § 544 actions. Once that time expires, a creditor may then pursue a similar fraudulent transfer action in state court) (emphasis added); *Johnson v. Allied Recycling, Inc.,* 746 S.E. 2d 728, 731 (Ga. Ct. App. 2013) ("Once this statute of limitation expires [under § 546], 'a creditor regains standing to pursue a state law fraudulent conveyance action, in its own name and for its own benefit'"); *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993) ("The trustee's exclusive right to maintain a fraudulent conveyance cause of action expires and creditors may step in (or resume actions) when the trustee no longer has a viable cause of action").

Within the Third Circuit, at least one court has granted relief for a creditor to pursue a fraudulent transfer when the debtor-in-possession refused to recover a fraudulent transfer. *Martelli v. Colts Neck Golf & Country Club*, 2015 U.S. Dist. LEXIS 112034, at * 41-43 (N.J. Dist. Ct. Aug. 24, 2025). The court in *Martelli* found that the creditor lacked adequate protection under § 362(d)(1) when the debtor-in-possession refused to prosecute a fraudulent transfer claim against insiders.

Here, similar facts exist, while the Debtors held the status of debtor-in-possession, they willfully failed to pursue any fraudulent transfer claims that they had. In fact, in response to a question posed by counsel for the Judgment Creditors during the trial on the motion to appoint a trustee, White responded, "Why should I?" when asked whether the Debtors would pursue any avoidance action. There was absolutely no interest in protecting their own interest in recovering fraudulent transferred assets. While a Trustee has now been appointed, the Trustee's statute of limitations to bring such claims expired prior to his appointment. Again, while the Judgment Creditors understand that this limitations defense can be waived, it is clear that the Non-Debtor

Parties intend to raise this defense and have done so in their Answer to the Trustee's fraudulent transfer claims. (Doc. 11, p. 9 in No. 25-00033-DSC). There has been no indication that such a defense will be waived by the Non-Debtor Parties. In turn, the Judgment Creditors are placed in a position that lacks adequate protection, similar to that of the creditor in *Martelli*. The Trustee's fraudulent transfer claims may be dismissed simply on statute of limitations grounds. If the Judgment Creditors are not afforded relief from the stay to pursue these fraudulent transactions, then proper adequate protection is absent as no party would be able to pursue these fraudulent transfers. Therefore, the Judgment Creditors should be afforded relief from the stay to pursue these causes of action.

Similar to *Martelli*, the court in *In re Melly*, 2019 Bankr. LEXIS 1383, at *12-13 (N.J. Bankr. Ct. Apr. 29, 2019) granted relief from the stay for a creditor to pursue fraudulent transfer claims when the trustee in the chapter 7 case had no interest in pursuing such claims. While the present case differs from *Melly* in the fact that the Trustee here has filed similar claims for fraudulent transfers, the fact remains that such claims are barred by the looming statute of limitations defense that has been raised by the Non-Debtor Parties. It appears that the the Non-Debtor Parties will be successful in dismissing the Trustee's claims based upon the expired limitations period; and thus, if the Judgment Creditors are not granted relief from the stay, the fraudulent transfer claims cannot be pursued by any other representative of the estate, similar to the situation in *Melly*. An inequitable result would ensue if neither the Trustee nor the Judgment Creditors could pursue these fraudulent transfer causes of action. Since the Trustee's claims are subject to a stricter statute of limitations period, it would be more equitable to grant relief to the Judgment Creditors to pursue these claims subject to the oversight of this Court.

Case 22-02429-DSC11    Doc 714    Filed 09/22/25    Entered 09/22/25 13:55:48    Desc
Main Document    Page 14 of 18

Due to the inaction taken by the Debtors during their time as debtors-in-possession, the statute of limitations under § 546 expired which in turn provides a strong affirmative defense to the Non-Debtor Parties concerning the fraudulent transfer claims. As a result, the Trustee's fraudulent transfer claims likely are barred due to this limitations defense. In turn, an inequitable result would likely result if the Judgment Creditors cannot pursue their fraudulent transfer claims (i.e., no such cause of action could be pursued by any party). Therefore, to avoid such an inequitable result, the Judgment Creditors respectfully request this Honorable Court to grant this motion and grant relief from the stay to the Judgment Creditors to proceed with their fraudulent transfer claims against the Sewer System Defendants in the AP.

## **CONCLUSION**

In sum, the factors to annul the automatic stay weigh in favor of doing so. The Judgment Creditors never intended to violate the automatic stay and the case law and statutory law relied upon by the Judgment Creditors provided support for their actions, even though this Court was not persuaded by such authority. Additionally, the inequitable acts of the Debtors and Non-Debtor Parties warrant annulling the stay as their actions have detrimentally affected the Estate and the Judgment Creditors, along with the other creditors. Alternatively, the Judgment Creditors request relief from the automatic stay to pursue the fraudulent transfer claims in the AP, as amended by the proposed Amended Complaint, as the Trustee very likely will not overcome the statute of limitations defense asserted by the Non-Debtor Parties, especially since there has been no indication that the Non-Debtor Parties intend on waiving such a defense, and have in fact asserted such defense affirmatively. Wherefore, the Judgment Creditors respectfully request this Honorable Court to grant this motion and annul the automatic stay retroactively, pursuant to § 362(d)(1), (d)(2)(A), (d)(2)(B), to the date of the filing of the Judgment Creditors' state court complaint (May 27, 2025), or alternatively, grant the Judgment Creditors relief from the automatic stay to pursue

the fraudulent transfer claims under the AP, as to be amended. The Judgment Creditors further request this Court to waive the stay otherwise imposed by Rule 4001(a)(4).

*Respectfully submitted this 22nd day of September, 2025.*

/s/ Robert P. Reynolds
Robert P. Reynolds (REYNR4202)
*Attorney for Judgment Creditors*

**OF COUNSEL:**
REYNOLDS, REYNOLDS & LITTLE, LLC
Post Office Box 2863
Tuscaloosa, Alabama 35403-2863
Telephone: 205-391-0073

s/ Bobby H. Cockrell, Jr.
Bobby H. Cockrell, Jr.
Bar Number: ASB-1332-E47B
*Attorney for Judgment Creditors*
bcockrell@ccrr.law

s/ G. Scotch Ritchey, Jr.
G. Scotch Ritchey, Jr.
Bar Number: ASB-6144-Q55D
*Attorney for Judgment Creditors*
sritchey@ccrr.law

**OF COUNSEL:**
COCKRELL, COCKRELL, RITCHEY & RITCHEY, LLP
1409 University Boulevard
Tuscaloosa, Alabama 35401
Telephone: (205) 349-2009
Facsimile: (205) 758-3090

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September, 2025, I served the forgoing document by filing a copy of the foregoing with the Clerk of Court using the CM/ECF system which will provide notice to the following CM/ECF participants:

**Harry P. Long**
THE LAW OFFICES OF HARRY P. LONG, LLC
110 W 11th Street
Suite 2A
Anniston, AL 36201
Telephone: (256) 237-3266
hlonglegal8@gmail.com

**W. Marcus Brakefield**
P.O. Box 2427
Tuscaloosa, AL 35403
Telephone: (205) 345-6789
bankruptcy@hsmbb.com

**J. Thomas Corbett**
**Jon A. Dudeck**
BANKRUPTCY ADMINISTRATOR
1800 5th Avenue North
Birmingham, AL 35203
Telephone: (205) 714-3840
jtom_corbett@alnba.uscourts.gov
jon_dudeck@alnba.uscourts.gov

**Jim Pino**
JIM PINO & ASSOCIATES
363 Canyon Park Drive
Pelham, AL 35124
Telephone: (205) 663-1581
jim@jimpinoandassociates.com

**Bowdy J. Brown**
CAPELL & HOWARD, P.C.
150 South Perry Street
Montgomery, AL 36104
Telephone: (334) 421-8000
Facsimile: (334) 421-8888
bo.brown@chlaw.com

**Brandon Prince**
BHM LAW GROUP LLC
1330 21st Way S
Suite 100
Birmingham, AL 35205
Telephone: (205) 994-0902
brandon@bhmlawgroup.com

**Stephanie Lanier Weems**
MASSEY, STOTSER & NICHOLS, P.C.
1780 Gadsden Highway
Birmingham, AL 35235
Telephone: (205) 836-4586
Facsimile: (205) 836-4520
sweems@msnattorneys.com

**Robert H. Adams**
**Frederick Darrell Clarke, III**
RUMBERGER, KIRK & CALDWELL, P.C.
2001 Park Place North
Suite 1300
Birmingham, AL 35209
Telephone: (205) 572-4929
Facsimile: (205) 326-6786
radams@rumberger.com
fclarke@rumberger.com

**Bill D. Bensinger**
CHRISTIAN & SMALL, LLP
1800 Financial Center

**Clyde Ellis Brazeal, III**
JONES WALKER LLP
420 20th Street North

505 20th Street North  
Suite 1800  
Birmingham, AL 35203  
Telephone: (205) 795-6855  
bdbensinger@csattorneys.com  

**Brian Walding**  
WALDING LLC  
2227 First Avenue South  
Suite 100  
Birmingham, AL 35233  
Telephone: (205) 307-5050  
Facsimile: (205) 307-5051  
bwalding@waldinglaw.com  

**R. Scott Williams**  
RUMBERGER, KIRK & CALDWELL, P.C.  
2001 Park Place North  
Suite 1300  
Birmingham, AL 35203  
Telephone: (205) 572-4926  
Facsimile: (205) 326-6786  
swilliams@rumberger.com  

Ste. 1100  
Birmingham, AL 35203  
Telephone: (205) 244-5237  
Facsimile: (205) 244-5400  
ebrazeal@joneswalker.com  

**James A. Harris, III**  
**Clyde O. Westbrook, III**  
WATKINS & EAGER PLLC  
1904 First Avenue North  
Suite 300  
Birmingham, AL 35203  
Telephone: (205) 732-9160  
Facsimile: (205) 449-1750  
jharris@watkinseager.com  
twestbrook@watkinseager.com  

**James Blake Bailey**  
**Richard Aaron Chastain**  
BRADLEY ARANT BOULT CUMMINGS LLP  
1819 Fifth Ave N  
Birmingham, AL 35203  
Telephone: (205) 521-8913  
Facsimile: (205) 488-6913  
jbailey@bradley.com  
achastain@bradley.com  

I hereby certify that a copy of the foregoing document has also been served upon the following by first class United States mail, properly addressed with postage prepaid on this 22nd day of September, 2025:

**ECO-Preservation Services, L.L.C.**  
P.O. Box 679  
Leeds, AL 35094  

**John Michael White, Sr.**  
7110 Mountain View Lane  
Leeds, AL 35094  

**SERMA Holdings, LLC**  
P.O. Box 679  
Leeds, AL 35094  

**All creditors listed in the matrix attached as Exhibit 2.**  

*s/ G. Scotch Ritchey, Jr.*  
*Of Counsel*