| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 11 |
| ECO-PRESERVATION SERVICES, | ) |
| L.L.C., | ) Case No. 22-02429-DSC11 |
| | ) |
| Debtor. | ) (JOINTLY ADMINISTERED) |

## RESPONSE IN OPPOSITION TO JUDGMENT CREDITORS' MOTION TO ANNUL THE AUTOMATIC STAY OR ALTERNATIVELY FOR RELIEF FROM THE AUTOMATIC STAY

Interested Parties Knobloch, Inc. ("**Knobloch**"), Tannehill Sewer, LLC ("**Tannehill**"), SERMA Funding, LLC ("**SERMA Funding**"), Shandi R. White, and M. Paula White (jointly the "**Non-Debtor Defendants**") hereby respond in opposition to the Motion to Annul the Automatic Stay or Alternatively for Relief from the Automatic Stay (Doc. 714, the "**Motion**") filed by Lindsay Davis, Benjamin Davis, Nicole Slone, Monica Lawrence, and John Lawrence, Jr. (collectively the "**Judgment Creditors**").

The Motion is the Judgment Creditors' third attempt to convince the Court that their ambush litigation in Tuscaloosa County Circuit Court either did not violate the automatic stay, or at least that they should be excused from any consequences of their stay violation. But they fail to present any compelling reason relief should be granted. As a threshold matter, they fail to explain how this Court would have the power to grant the requested relief in light of the pending appeal from this Court's August 28, 2025 Order. On the merits, the Motion should be denied because the Judgment Creditors' situation is one of their own making. They chose to disregard the automatic stay, putting their faith in a "reversion theory" regarding the right to pursue avoidance actions that would otherwise belong to the trustee—a minority interpretation of 11 U.S.C. § 546 *that does not say anything about the automatic stay*. And even after this Court announced its ruling that their lawsuit violated the

1

automatic stay, the Judgment Creditors chose not to seek stay relief. They should not be rescued from the consequences of their own decisions now.

## FACTUAL BACKGROUND

1. Knobloch is an Alabama corporation formed on or around February 13, 1991. Since the 1990s, Knobloch has held a National Pollutant Discharge Elimination System permit, which allows it to discharge treated wastewater into Mud Creek from a facility located at 12784 Woodland Park Circle, McCalla, Alabama (the "**WWTP**"). In addition to holding the NPDES Permit, Knobloch owns a discharge pipeline, which carries the treated wastewater from the WWTP to the ultimate discharge point.

2. Since at least early 2020, Knobloch has been owned 25% by J. Michael White and 75% by M. Paula White. Since its formation, Knobloch has conducted annual shareholder meetings and filed annual reports with the Alabama Secretary of State. Each year, Knobloch has also filed federal and state tax returns. Beginning in 2019, these tax returns have been consolidated with the returns for its wholly-owned subsidiary, Tannehill. Knobloch also has maintained separate books and a separate bank account at all relevant times.

3. Debtor ECO-Preservation Services, L.L.C. ("**ECO-Preservation**") is an Alabama limited liability company formed on or around December 6, 1994. Since 1999, ECO-Preservation has operated a sanitary sewer collection and treatment system (the "**Sewer System**") that services residential and commercial customers in and around the City of Lake View, Alabama. ECO-Preservation owns the personal property and improvements comprising the WWTP, although the real estate where the WWTP is located is owned by Tannehill. ECO-Preservation treats sewage at the WWTP and then discharges it through a discharge pipeline owned by Knobloch.

4. ECO-Preservation is owned by Debtor SERMA Holdings, LLC ("**SERMA Holdings**") (45%), Henry Tyler (40%) and Curtis White Development (15%). Each year, ECO-

2

Preservation has filed federal and state tax returns. ECO-Preservation maintains separate bank accounts and separate books from any other entity.

5. Debtor SERMA Holdings, LLC is an Alabama limited liability company formed on or around October 13, 1994. SERMA Holdings operates as a holding company for certain other businesses. SERMA Holdings is owned by J. Michael White (50%) and M. Paula White (50%). At all relevant times, SERMA Holdings has filed a consolidated tax return with its subsidiary, SERMA Funding. SERMA Holdings maintains records and bank accounts separate from any other company.

6. Tannehill, formerly known as Stratford Homes and Land, LLC, is an Alabama limited liability company formed on or around March 8, 2008. Since August 2019, Tannehill has owned a sewage collection system that collects the sewage to be treated at the WWTP. Tannehill also owns the real estate on which the WWTP is located. Tannehill is wholly owned by Knobloch, and each year has filed a consolidated tax return with Knobloch. Tannehill maintains books and bank accounts separately from any other company.

7. SERMA Funding is an Alabama limited liability company formed on or around March 8, 2008. SERMA Funding is wholly owned by SERMA Holdings. SERMA Funding is a limited liability company that has served as a lender for both ECO-Preservation and other parties in the Bankruptcy Cases. It is a secured creditor in ECO-Preservation's bankruptcy case. At all relevant times, each year SERMA Funding has filed a consolidated tax return with SERMA Holdings. SERMA Funding maintains books and bank accounts separately from any other company.

8. In 2017, the Judgment Creditors, who are residents of the City of Lake View, filed three complaints against J. Michael White, ECO-Preservation, SERMA Holdings, Builder1.com (f/k/a Aketa Management Group), and Knobloch, as well as the City of Lake View, and the

3

Government Utility Service Corporation for the City of Lake View in the U.S. District Court for the Northern District of Alabama.[1]

9.      Each of the Judgment Creditors asserted claims under 42 U.S.C. § 1983, the Fair Debt Collection Practices Act, and various state laws stemming from fees and charges for sewer system and water lines.

10.      The Judgment Creditors sought compensatory damages, punitive damages, injunctive relief, and costs and attorney's fees against all of the defendants.[2]

11.      The Judgment Creditors' lawsuit proceeded to a jury trial beginning in August of 2021. After the Judgment Creditors rested their case, Knobloch moved for judgment as a matter of law on the Davis Parties' claims. On September 1, 2021, the district court granted Knobloch's motion for a judgment as a matter of law. Case No. 7:17-cv-01533, Trial Transcript, Vol. III, at p. 164.

12.      The jury found in favor of the Judgment Creditors on three of the claims, and the court entered a judgment that, as amended, awarded various damages against Mr. White, SERMA Holdings, Builder 1.com, LLC (f/k/a Aketa Management Group),[3] and ECO-Preservation.[4]

13.      On October 5, 2022, following the end of the appeal from the jury verdict, ECO-Preservation, SERMA Holdings, and J. Michael White (collectively "**Debtors**") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

---

[1] *Davis v. White*, Case 7:17-cv-01533-LSC (N.D. Ala. 2017); *Slone v. White*, Case 7:17-cv-01534-LSC (N.D. Ala. 2017); *Lawrence v. White*, Case 7:17-cv-01535-LSC (N.D. Ala. 2017).

[2] *See Davis*, ECF No. 1 (Complaint), Case 7:17-cv-01533-LSC (N.D. Ala. Sep. 11, 2017); *Slone*, ECF No. 1 (Complaint), Case 7:17-cv-01534-LSC (N.D. Ala. Sep. 11, 2017); *Lawrence*, ECF No. 1 (Complaint), Case 7:17-cv-01535-LSC (N.D. Ala. Sep. 11, 2017).

[3] Builder1 later became Bama Management, LLC.

[4] *Davis*, ECF No. 206 (Amended Final Order), Case 7:17-cv-01533-LSC (N.D. Ala. Sep. 9, 2021).

4

14.     The Judgment Creditors filed Proof of Claims in the bankruptcy court on November 23, 2022, related to the judgment they obtained against the Debtors. *See* Claims Register, Claim #2, #3, #4.

15.     On December 30, 2024, this Court entered an order approving the appointment of Brian R. Walding (the "**Trustee**") as Chapter 11 Trustee for ECO-Preservation in Case No. 22-02429, for SERMA Holdings in Case No. 22-02430, and for J. Michael White, Sr. in Case No. 22-02431 (together with Cases 22-02429 and 22-02430, the "**Bankruptcy Cases**"). By an order dated December 15, 2022, the Bankruptcy Court directed the joint administration of the Debtors' bankruptcy cases under Case Number 22-02429.

16.     On May 27, 2025, the Judgment Creditors filed a Complaint in the Circuit Court of Tuscaloosa County, which docketed the case as 63-CV-2025-900565.00 (the "**Complaint**"). The Complaint names as defendants the Non-Debtor Defendants, as well as Henry H. Tyler, Curtis White Development Co., LLC, and Ben J. Schillaci, both in his individual capacity and in his capacity as Trustee for the EDTNRE Trust. The Complaint purports to assert four counts, entitled "Piercing Corporate Veil," "Alter Ego," "Fraudulent/Voidable Transfers," and "Civil Conspiracy."[5] According to the Complaint, these causes of action are meant to unwind transfers between the Debtors and the Defendants.[6]

17.     Although the Judgment Creditors did not name any of the Debtors as defendants, the Complaint is based on express allegations of wrongdoing *by the Debtors*. These include seventeen

---

[5] Compl. ¶¶ 94–111.

[6] Compl. pp. 15–18.

allegations of "fraudulent" actions,[7] as well as failure to comply with "requirements of corporate law",[8] "misuse[] and mismanage[ment] to divert funds,"[9] and similar sorts of charges.

18.     In the Complaint, the Judgment Creditors request (among other forms of relief) "judgment avoiding the transfers [from the Debtors to the defendants]" and appointment of a receiver to handle assets and property transferred by the Debtors.[10]

19.     Simultaneously with the Complaint, the Judgment Creditors filed in the state court an ex parte motion seeking the imposition of a temporary restraining order against the defendants (the "**TRO Motion**"). The Judgment Creditors did not provide any notice to undersigned counsel or the parties regarding the filing of the State Court Complaint or the TRO Motion. Nor did the Judgment Creditors seek leave from this Court.

20.     Two days after the filing of the Complaint and TRO Motion, on May 29, 2025, Hon. Bradley Almond, Circuit Court Judge for Tuscaloosa County, entered a temporary restraining order substantially along the lines requested by the Judgment Creditors.

21.     The Non-Debtor Defendants removed the state court case to this Court, where it was docketed as Adversary Proceeding No. 25-00019.

22.     On June 4, 2025, this Court held a hearing on the Non-Debtor Parties' Emergency Motion to Enforce the Automatic Stay (Doc. 640) on June 4, 2025. At the conclusion of the hearing, the Court entered an oral order on the record holding that the automatic stay under 11 U.S.C. § 362 prohibited the Judgment Creditors from pursuing the claims in the State Court Complaint. Doc. 721; *see also* Doc. 646 (written order following hearing).

---

[7] Compl. ¶¶ 37, 40, 70–72, 74, 76, 79, 82–90.

[8] Compl. ¶ 49.

[9] Compl. ¶ 55.

[10] Compl. ¶ 106.

23.     On June 18, 2025, the Judgment Creditors filed a Motion to Alter, Amend, or Vacate and for Relief from Order. Doc. 659.

24.     On August 28, 2025, this Court entered its Order on Judgment Creditors' Motion to Alter, Amend, or Vacate and for Relief from Order (the "**Order**"). Doc. 699. In the Order, the Court determined that the Judgment Creditors' claims for fraudulent transfers violated the automatic stay, but Shandi R. White and M. Paula White were not in the zone of interests of parties who could enforce the automatic stay. The Court further held that the Judgment Creditors' claims for "alter ego" and "veil piercing" were not stayed by the automatic stay.

25.     On September 11, 2025, the Non-Debtor Defendants filed a notice of appeal from the Order. Doc. 705. The Non-Debtor Defendants ask the district court to reverse the rulings that (1) the Judgment Creditors' claims may proceed against Shandi R. White and Mary Paula White, and (2) that the Judgment Creditors' alter ego and veil piercing counts are not barred by the automatic stay. Doc. 718. The appeal has been docketed in the U.S. District Court for the Northern District of Alabama as Case No. 2:25-cv-1578.

26.     The Judgment Creditors filed their Motion on September 22, 2025. Doc. 714. The Motion attaches a proposed amended complaint (the "**Amended Complaint**"), which the Judgment Creditors indicate they intend to file in Adversary Proceeding No. 25-00019.

27.     Currently, there are two actions pending that were filed by the Trustee against some of the Non-Debtor Defendants. On June 20, 2025, the Trustee filed a complaint against SERMA Holdings, Knobloch, Tannehill, and SERMA Funding, initiating Adversary Proceeding No. 25-00024 (the "**Substantive Consolidation Complaint**"). In the Substantive Consolidation Complaint, the Trustee asks the Court to order that Knobloch, Tannehill, and SERMA Funding be substantively consolidated with the Debtors, causing Knobloch, Tannehill, and SERMA Funding's assets to be available to satisfy the obligations of the Debtors. On August 15, 2025, the Trustee filed a complaint

7

against the Non-Debtor Defendants (other than Shandi R. White), as well as Henry H. Tyler, Curtis White Development Co., LLC, and Ben J. Schillaci, both in his individual capacity and in his capacity as Trustee for the EDTNRE Trust, initiating Adversary Proceeding No. 25-00033 (the "**Trustee Fraudulent Transfer Complaint**"). In the Trustee Fraudulent Transfer Complaint, the Trustee makes allegations that are nearly identical to the allegations in the Complaint and asserts claims for fraudulent transfers against the defendants.

## ARGUMENT

### I.     This Court Lacks Jurisdiction to Alter the Order While the Appeal is Pending.

Before even reaching the factual and legal problems with the Judgment Creditors' Motion, this Court should deny the Motion for jurisdictional reasons. Over a month ago, the Non-Debtor Defendants appealed this Court's Order on Judgment Creditors' Motion to Alter, Amend, or Vacate and for Relief from Order. *See* Doc. 705. The appeal is now before the Northern District of Alabama, which has exclusive jurisdiction to review the Order.

In the Motion, the Judgment Creditors effectively ask the Court to modify, vacate, or set aside the portion of its prior order holding that the automatic stay applied to Counts I and II of the Complaint as to the Non-Debtor Defendants. *See* Doc. 714-1 at 3. This Court lacks jurisdiction to grant that relief. "The filing of a proper notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the appellate court and divests the trial court of its control over those aspects of the case involved in the appeal." *In re Walker*, 515 F.3d 1204, 1211 (11th Cir. 2008). Thus, "[c]ourts have consistently held that a bankruptcy court lacks jurisdiction to vacate or modify an order which is the subject of a pending appeal." *In re Licking River Mining, LLC*, 535 B.R. 731, 737 (Bankr. E.D. Ky. 2015) (citing *In re Mazzocone*, 1995 WL 113110, at *4 (E.D. Pa. Mar. 16, 1995)). Courts in the Eleventh Circuit have emphasized the broad scope of the "divestiture" rule: "Clearly, if the relief sought below would interfere with the appeal process, the Court whose order is on appeal

does not have any jurisdiction and should not interfere with the appeal process." *In re Bilzerian*, 188 B.R. 44, 45 (Bankr. M.D. Fla. 1995); *accord, e.g.*, *In re ECI Pharms. LLC*, 669 B.R. 617, 624-25 (Bankr. S.D. Fla. 2025) ("[T]he divestiture rule exists to ensure a trial court does not 'impermissibly interfere with the appellant's rights in its appeal.' To that end, the divestiture rule requires a trial court to consider whether the issues before it, 'although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.'") (quoting *In re Old Cold, LLC*, 602 B.R. 798, 823 (B.A.P. 1st Cir. 2019), *aff'd sub nom. In re: Old Cold, LLC*, 976 F.3d 107 (1st Cir. 2020) and *In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010), *opinion modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011); other internal quotation marks and citations omitted)); *In re Matter of Urban Develop. Ltd., Inc.*, 42 B.R. 741, 744 (Bankr. M.D. Fla. 1984) ("While the bankruptcy court has a wide latitude to reconsider and vacate its own prior decisions, it may not do anything which has any impact on the order on appeal.").

Here, the relief sought in the Motion directly implicates the order on appeal. The appeal concerns whether this Court erred by allowing the Judgment Creditors' alter ego and veil-piercing "claims" in the State Court Complaint to proceed against Knobloch, Tannehill, and SERMA Funding, and whether the Complaint was stayed as to Shandi R. White and Mary Paula White. Doc. 718. Lifting the stay as to the other claims would affect the arguments on appeal concerning claims against the Non-Debtor Defendants. Conversely, if an appellate court agrees with some or all of the challenges brought by the Non-Debtor Defendants, the Judgment Creditors' litigation will be narrowed. This Court and the parties should not be expending time and resources on a path of litigation that may turn out to be contrary to an appellate ruling in the near future. Such an outcome would be wasteful and unnecessary, particularly while this bankruptcy proceeding involves other live issues.

9

Because of the jurisdictional bar, buttressed by principles of judicial economy, this Court should deny the Motion.

## II. The Judgment Creditors Do Not Show Good Cause For Retroactive Annulment or Lifting of the Automatic Stay.

As to the merits of their Motion, the Judgment Creditors fail to show that this case fits the criteria for retroactive annulment of the stay or a lifting of the stay to pursue the claims in their Amended Complaint. Several months ago, the Judgment Creditors preferred to take their chances in state court rather than seek leave from this Court to lift the automatic stay. Rather than admitting their mistake, they continue attempting to justify their violation of the stay and launch misguided accusations at the Non-Debtor Defendants. The Judgment Creditors do not carry their burden to obtain any form of relief from the stay.

### A. Legal standards for relief from stay or retroactive annulment.

Under the Bankruptcy Code, a court may "grant relief from the stay … such as by terminating, annulling, modifying or conditioning such stay" under a "for cause" standard. 11 U.S.C. § 362(d)(1). The term "cause" is not defined in the Code, but the Eleventh Circuit has mentioned as applicable case-specific factors (1) whether the debtor acted in bad faith, (2) the "hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code," (3) "the policies reflected in the bankruptcy code[,]" (4) "interference with the bankruptcy," and (5) "the proportionality of the harms from modifying or continuing the stay." *In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013). The Eleventh Circuit has cautioned that retroactive annulment should only be granted "in appropriately *limited* circumstances" (emphasis original), and "the important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay." *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984). To sum up—it is not a step to be taken lightly or routinely.

A party seeking annulment bears the burden of proof to "establish a *prima facie* case of cause for relief." *Lord v. True Funding, LLC*, 618 B.R. 588, 592 (S.D. Fla. 2020) (quoting *In matter of Shree Meldikrupa Inc.*, 547 B.R. 862, 871 (Bankr. S.D. Ga. 2016)). The burden is higher for unsecured creditors. *Feingold*, 30 F.3d at 1277 ("Unsecured creditors are generally entitled to relief from an automatic stay only in extraordinary circumstances" (quoting *In re Brown*, 311 B.R. 409, 412–13 (E.D. Pa. 2004)).

**B.**   **Granting the Judgment Creditors annulment or relief from the automatic stay would be futile because they cannot pursue claims that belong "exclusively" to the Trustee and which have not been abandoned.**

First, and most fundamentally, the Judgment Creditors' request for both annulment and stay relief should be denied because they cannot pursue fraudulent transfer claims against the Non-Debtor Defendants as a matter of law, and thus their Motion is futile. It is well-established in caselaw—including decisions from the U.S. District Court for the Northern District of Alabama—that creditors only regain standing to bring state-law fraudulent transfer claims against transferees of the debtor upon (1) the discharge of the debtor from bankruptcy (without resolution of the creditor's claim) or (2) the trustee's formal abandonment of an estate cause of action. *In re Leopard*, 2014 WL 2740320, at *3–*4 (N.D. Ala. June 17, 2014) (holding that creditor could not pursue fraudulent conveyance claim against third party when chapter 7 trustee had not abandoned the claim); *Counsel Fin. Servs. LLC v. Wood*, 2013 WL 6490550, at *3 (N.D. Ala. Dec. 10, 2013) (holding that creditor regained standing to pursue fraudulent conveyance claims only after those claims were abandoned by the trustee and the bankruptcy was fully administered); *accord, e.g.*, *In re Wilton Armetale, Inc.*, 968 F.3d 273, 284 (3d Cir. 2020) (holding that a trustee must "overtly" abandon a cause of action against a third party in order for the claim to revert to the creditor); *In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 85–86 (2d Cir. 2019) (stating in *dicta* that the argument for an automatic reversion of state-law claims from the trustee to creditors upon the expiration of the trustee's statute of

11

limitations "has no basis in the [Bankruptcy] Code's language"); *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) (holding creditors could not pursue claims that were effectively the same as the trustee's potential fraudulent transfer claims unless trustee abandoned those claims); *Hatchett v. United States*, 330 F.3d 875, 886 (6th Cir. 2003) (noting that the trustee's right to bring an action for fraudulent conveyance is "exclusive," but the claim may revert to the creditor upon the debtor's discharge); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 702 (2d Cir. 1989) (holding that creditor lacked standing to pursue claim against third party when trustee pursued same claim and had not abandoned it); *In re Vandevort*, No. BAP CC-09-1078-MOPAR, 2009 WL 7809927, at *5–*6 (B.A.P. 9th Cir. Sept. 8, 2009) ("[N]o one disputes that [the creditor] lacks the right … to prosecute the [action for fraudulent transfers] as long as the [t]rustee possesses the authority to prosecute such claims under section 544," and holding that those claims are superseded by the trustee's authority "unless and until claims are abandoned under section 554"); *In re W. Robidoux, Inc.*, No. 22-MC-9005-NKL, 2022 WL 17620269, at *12 (W.D. Mo. Dec. 13, 2022) (holding that creditor could not pursue state-law claims against third parties based on purported implicit abandonment of such claims by trustee, particularly when the trustee represented to the court "that she fully intends to proceed against the" third-party defendants).

Here, rather than "overtly" abandoning the claims the Judgment Creditors wish to prosecute, **the Trustee is expressly pursuing** them in the Trustee Fraudulent Transfer Complaint, and effectively pursuing the same relief in the Substantive Consolidation Complaint. Thus, under the near-consensus interpretation of section 544, those claims belong "exclusively" to the Trustee, and the Judgment Creditors cannot pursue the same claims concurrently.

The Judgment Creditors attempt to avoid this obvious (and fatal) problem with the Motion by again pressing the Court to adopt the "reversion theory," a minority interpretation of section 544 that presumes that upon the apparent passing of the trustee's statute of limitations under section 546,

12

the right to pursue avoidance actions against third parties automatically "reverts" to the creditors without the trustee's abandonment of the claims. This issue has been briefed repeatedly, and this Court squarely rejected the "reversion theory" in its Order. *See* Doc. 699 at p. 23.

Undeterred, the Judgment Creditors again point to the handful of cases that have supported the "reversion theory" as support for their argument that they are entitled to relief from the automatic stay.[11] *See* Motion at pp. 5-7. But the Judgment Creditors miss the point completely. First, as discussed below, the "reversion theory" does not say anything about the automatic stay, so it does not support their argument that their state court ambush was based on a mistaken understanding of the law. But more importantly, the Judgment Creditors fail to understand that this Court's rejection of the "reversion theory" necessarily means that the Judgment Creditors cannot prosecute the fraudulent transfer claims in their Complaint.

The power to prosecute those claims is vested "exclusively" in the Trustee; unless and until he abandons the claims or the bankruptcy case closes without a resolution of those claims, the Judgment Creditors are barred from pursuing the same claims against the same defendants.

---

[11] The Judgment Creditors throw stones at the Second Circuit's analysis in *In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d at 85–86, as "dicta" – but do so from the glass house of reliance **on the dicta in the very district court decision that the Second Circuit rejected**. The district court decision that endorsed the reversion theory advocated by a group of creditors went on to rule against those creditors on other grounds and dismiss their adversary proceedings. *In re Tribune Co. Fraudulent Conveyance Litig.*, 499 B.R. 310, 324–25 (S.D.N.Y. 2013). When the Second Circuit affirmed the decision dismissing the creditors' proceedings, it dedicated several pages to repudiating the "reversion theory" because of its "material ambiguities, anomalies, and outright conflicts with the purposes of Code Sections 544, 362, and 548." *In re Tribune*, 946 F.3d at 85. While neither of these decisions is binding on this Court, it should be obvious there is greater persuasive value in a three-judge appellate panel's decision refuting a district judge's reasoning than in the refuted reasoning itself.

13

**C.** **The Judgment Creditors do not show any actions by the Non-Debtor Defendants to justify modification or retroactive annulment of the automatic stay.**

The Judgment Creditors' Motion should also be denied because they fail to demonstrate any "cause" for annulling the automatic stay. Although the Judgment Creditors are required to demonstrate that there is "cause" for granting the requested relief, they do not engage with the factors indicating whether "cause" exists. Instead, they spend the bulk of their argument on a strained and inapt analogy between this case and *In re Patel*, 642 B.R. 187 (N.D. Bankr. Ga. 2022), *aff'd*, 142 F.4th 1313 (11th Cir. 2025). In *Patel*, the bankruptcy court found that there had been an automatic stay violation by former business partners of the debtor when they acted to enforce an arbitration award against family members of the debtor. 642 B.R. at 199. The former partners moved for a retroactive annulment of the automatic stay. *Id*. at 195. The bankruptcy court granted it for several reasons. First, the court observed the former partners had participated in the arbitration only after the debtor "initiated the arbitration because he wanted to participate to bring claims against the [former business partners] for his own benefit." *Id*. at 200. That in itself was a violation of the automatic stay because the debtor encroached on the trustee's right to assert claims of the estate. *Id*. at 202. Second, the former business partners told the arbitrator about the debtor's bankruptcy (*id.* at 200) and "tried to correct the Arbitration Award, but Debtor actively resisted such a correction because it would have eliminated Debtor's ability to undo the Arbitration Award against his family." *Id*. at 199. Third, the bankruptcy court wrote that had the former partners moved to modify the stay to allow for arbitration before the proceeding began, the court would have granted the motion so that they could "liquidate those claims" and "file a proof of claim against Debtor's bankruptcy estate." *Id*. at 200.

This case lacks any of the factors that the *Patel* bankruptcy court found to merit a retroactive annulment. **First**, in *Patel* the party directly benefiting from the automatic stay (the debtor) engaged in clear procedural gamesmanship by initiating an arbitration (whereby he violated the automatic

14

stay), inducing his former partners to participate (whereby they joined in the violation of the stay), and then objecting when those former partners tried to cure the violation of the automatic stay. Nothing like that happened here. The Judgment Creditors conceived and executed the idea of filing the Complaint and TRO Motion in state court without giving any notice to the Non-Debtor Defendants of the proceeding until after the TRO Motion had been granted. Neither the Debtors nor the Non-Debtor Defendants ever violated the automatic stay themselves, nor did they encourage the Judgment Creditors to pursue actions in state court in violation of the automatic stay.

*Second*, the creditors in *Patel* sought to avoid any infringement of the automatic stay by modifying the arbitration award and attempting to reach an accord with the debtor. In this case, the Judgment Creditors never coordinated with the Trustee or the Non-Debtor Defendants before filing in state court. Their decision to litigate in state court was purely an instance of forum-shopping without any efforts to minimize its effects on the ongoing bankruptcy proceedings.

*Third*, the Judgment Creditors did not need to file the Complaint in state court in order to liquidate their claims or otherwise preserve them for the bankruptcy proceeding. Their proofs of claim were already before this Court, and there was no barrier to this Court considering their claims.

The Non-Debtor Defendants do not make these points merely to distinguish *Patel*. Rather, despite their best efforts, the Judgment Creditors have not identified a "for cause" ground to grant any relief from the automatic stay. The *Patel* court found it inequitable for the debtor to wield the automatic stay as a shield after he had deliberately violated the automatic stay himself and attempted to trap the former partners into aggravating the violation of the automatic stay. The Judgment Creditors cannot point to any comparable sort of inequitable conduct by the Non-Debtor Defendants.

The Judgment Creditors attempt to shore up their weak analogy to *Patel* by pointing to the allegations in the Complaint regarding the transactions between the Debtors and Non-Debtor Defendants. But merely pointing to allegations in the barred claims is not enough to count as

15

"extraordinary circumstances"[12] to justify relief from the automatic stay. *See In re Saunders*, 101 B.R. 303, 306 (Bankr. N.D. Fla. 1989) (denying creditor's motion to lift stay so that they could press fraudulent transfer claims against transferee of debtor); *see also In re Eagle Enterprises, Inc.*, 265 B.R. 671, 680 (E.D. Pa. 2001) (holding bankruptcy court did not abuse its discretion in denying creditor's motion for relief from automatic stay to pursue claims against third-parties when trustee had pending claims against the same defendants based on the same factual allegations). Indeed, the Judgment Creditors' argument proves too much. *Every* complaint asserting fraudulent transfer claims will allege that the defendants engaged in conduct that may have harmed the debtor's estate; if that alone were enough to justify stay relief as a matter of course, then the automatic stay's application to such claims would be pointless. If this Court decides it has jurisdiction to consider the Motion, it should hold that the Judgment Creditors have not met their burden to show that the automatic stay should be annulled.

## D. All relevant factors weigh against relief from the automatic stay.

Although the Judgment Creditors do not attempt to analyze the specific factors for determining whether there is cause for stay relief (despite their burden to do so), those factors weigh against any relief. To determine whether "cause" for stay relief exists, the Eleventh Circuit has directed bankruptcy courts to consider this non-exhaustive list of factors: (1) whether the debtor acted in bad faith, (2) the "hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code," (3) "the policies reflected in the bankruptcy code[,]" (4) "interference with the bankruptcy," and (5) "the proportionality of the harms from modifying or continuing the stay." *In re Feingold*, 730 F.3d at 1277. None of those factors favors the Judgment Creditors.

---

[12] *Feingold*, 750 F.3d at 1277 ("Unsecured creditors are generally entitled to relief from an automatic stay only in extraordinary circumstances" (quoting *In re Brown*, 311 B.R. at 412–13).

*First*, there was no bad faith from the Non-Debtor Defendants in connection with the Judgment Creditors' automatic stay violations. The Judgment Creditors filed the Complaint without any prompting by the Debtors, Trustee, or Non-Debtor Defendants. The Judgment Creditors have had discovery responses from the Debtors concerning the Debtors' transactions with the Non-Debtor Defendants *for at least three and a half years*, long before the bankruptcy petitions were even filed. Yet at no point in the bankruptcy case did the Judgment Creditors try to pursue fraudulent transfer claims, much less have that pursuit frustrated or obstructed by the Non-Debtor Defendants. On the other hand, the Judgment Creditors have displayed bad faith in their conduct. Rather than seeking relief to litigate their fraudulent transfer claims against the Non-Debtor Defendants in this Court (or even providing notice to the Court that believed they had such claims and intended to pursue them), they have embroiled the parties in *three rounds* of motion briefing seeking forgiveness after they launched their ambush in state court.[13] This has cost the Non-Debtor Defendants tens of thousands of dollars in attorney's fees that could have been avoided from the start if the Judgment Creditors had simply moved to clarify the scope of the automatic stay prior to their state court ambush. Now, months after being thwarted, they implore this Court to relieve them from all of the consequences.

Even accepting the Judgment Creditors' contention that they believed stay relief was unnecessary—which the Non-Debtor Defendants find dubious—that excuse evaporated the day the Court found the Judgment Creditors in violation of the automatic stay. That was on June 4, 2025 (Doc. 646), **some two months before the expiration of the statute of limitations that the**

---

[13] Notably, the Judgment Creditors make it clear in their Motion that if they are successful on their claims and recover personal property that is "not necessary for a successful reorganization" (presumably meaning any cash recovery), those funds will go directly into their pockets and **not** accrue to the benefit of the bankruptcy estates. *See* Doc. 714 at p. 11. Whatever the reason for the Judgment Creditors' delay in pursuing their fraudulent transfer claims until the apparent expiration of the Trustee's statute of limitations under 11 U.S.C. § 546, they believe that timing has worked conveniently in their favor.

**Judgment Creditors have identified as problematic for their claims.** Nothing stopped the Judgment Creditors from seeking stay relief in those two months; instead, they chose only to seek reconsideration and then waited until September 22, 2025, after they believed the statute of limitations to have passed. The bad faith and delay is entirely on the part of the Judgment Creditors.

*Second*, denying the Judgment Creditors' motion for relief does not impose hardship on the Judgment Creditors when considered in light of the goals and purposes of the Bankruptcy Code. The rationale underlying section 362 is to provide breathing room for the orderly administration of the bankruptcy estate while preventing a "race to the courthouse" that benefits only the fastest and most aggressive creditors. *See, e.g.*, *Patel*, 642 B.R. at 196. Consequently, "the important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay." *In re Albany Partners*, 749 F.2d at 675. During the bankruptcy proceeding, creditors are supposed to show vigilance in protection of their rights *within the framework of the Bankruptcy Code*.

> [T]he Bankruptcy Code recognizes the conflicting loyalties and priorities of a debtor-in-possession in Chapter 11 and contemplates the exercise of trustee powers by a debtor-in-possession will be closely supervised by creditors whose interests might be affected thereby. …
>
> Thus, creditors must act as watchmen on the tower to assure that the debtor-in-possession, as the authorized representative of a bankruptcy estate is correctly exercising its discretion regarding the pursuit of causes of action which may be possessed by that estate. If the creditors in this case had knowledge of, or with a reasonable amount of diligence could have obtained knowledge of, the potential avoidance actions and the debtor-in-possession's election to forego the pursuit of such actions as the two-year period progressed, neither they nor any trustee subsequently appointed on their behalf will be heard to complain about the inequities of the application of a statute of limitations.

*In re Hydro–Action Inc.*, 341 B.R. 186, 191–92 (E.D. Tex. 2006) (internal citations omitted); *see also Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 821 (10th Cir. 1995) (noting that "creditors are not helpless when a debtor-in-possession refuses to bring avoidance actions and the statute of limitations

18

is nearing expiration" because "any party in interest may request appointment of a trustee" and "a creditors' committee or even an individual creditor may, with leave of the bankruptcy court, initiate avoidance and other actions when the debtor-in-possession has failed to do so."); *In re Draiman*, 714 F.3d 462, 466 (7th Cir. 2013) ("creditors are not powerless to prevent the running of the statute of limitations. A creditor can move for the appointment of a trustee in a Chapter 11 bankruptcy."). Any hardships that the Judgment Creditors might complain of are the result of their own decisions.

*Third*, granting stay relief to the Judgment Creditors would interfere with the bankruptcy proceeding. There are two pending adversary proceedings brought by the Trustee: one seeking substantive consolidation of the Non-Debtor Defendants, and one asserting fraudulent transfer claims. This Court should not permit the Judgment Creditors to jump in front of the Trustee in cases with such significant overlap. Duplicative cases mean duplicative litigation and duplicative expense, further complicating any path to resolution of these bankruptcy proceedings.

*Fourth*, the proportionality of the harms weighs against the Judgment Creditors. The Judgment Creditors chose to put all their eggs in the basket of state court litigation and gamble that they would not be found in violation of the automatic stay. For month after month, they passed up the chance to come to this Court. Granting the Judgment Creditors the stay relief they seek would not rewind the clock, but entail yet more proceedings and more diversion from the goal of an ultimate resolution of this bankruptcy.

Thus, all the factors that this Court ought to consider when considering a motion for stay relief (whether retroactive nullification or only a prospective lift) weigh against the Judgment Creditors. This Court should apply these factors and deny the Motion.

19

**E.    The Judgment Creditors' actions in state court were not based on a reasonable assessment of the automatic stay.**

The Judgment Creditors also fail in their self-portrayal as acting reasonably and innocently in their state court litigation tactics. They hang their hat on the "reversion theory," *i.e.* the theory that after expiration of the two-year statute of limitations in 11 U.S.C. § 546 for a trustee to bring an avoidance action, creditors acquire the right to pursue a fraudulent transfer in their own name for their own benefit in a state court. Doc. 714 at 6–7. There are several glaring holes in their discussion.

*First*, as the Court correctly pointed out in its August 28, 2025 Order, the "reversion theory" says nothing about the automatic stay: even if it were a correct interpretation of 11 U.S.C. § 546 (and it is not), it would not support the Judgment Creditors' arguments that they had a good-faith belief they could proceed without stay relief. *See* Doc. 699 at p. 23 ("Even if the reversion theory carries the day here (which it does not), this Court is unpersuaded that it also justifies a conclusion that the § 362 stay is lifted, automatically, upon expiration of the statute of limitations."). The reversion theory addresses ***who*** can assert state-law avoidance claims (the trustee or a creditor); it does not say anything about ***how*** those claims can be pursued, much less address the implications of the automatic stay. The Non-Debtor Defendants cannot improve on the Court's own conclusions on this issue:

> Certainly, Congress knows how to amend § 362 if it intends to; indeed, the 2005 amendments amended § 362 in numerous respects including the addition of several exceptions to the automatic stay under § 362(b). Section 362, however, has not been amended to include the passing of the limitations period of 11 U.S.C. § 546(a) as an exception to automatic stay.

Doc. 699 at 25.

*Second*, even if the Judgment Creditors had a genuine mistaken belief that the reversion theory might somehow grant them stay relief, the Judgment Creditors did not do what a reasonable creditor would have done in their circumstances: move this Court for relief from the automatic stay or seek a "comfort order" to the same effect. *In re Pody*, 42 B.R. 570, 573–74 (Bankr. N.D. Ala.

20

1984) ("if there is uncertainty about … the applicability of the automatic stay," "a creditor may petition the Court for clarification, and if the creditor does not, the creditor takes the calculated risk of being held in contempt."); *In re Johnson*, 608 B.R. 784, 790 (Bankr. S.D. Ga. 2019) (noting that seeking "relief from the stay clearly is the more prudent course of action" rather than "assuming" that an action will not violate the automatic stay); *In re Sage Richmond, LLC*, 297 B.R. 57, 60 (Bankr. E.D. Va. 2003) ("A creditor with doubt as to how the stay will apply to property of the estate should seek court permission and relief from stay." (punctuation and quotation omitted)); *In re Lickman*, 297 B.R. 162, 193 (Bankr. M.D. Fla. 2003) ("Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay. The [defendant] takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court."). "A creditor attempting to unilaterally interpret the application of the stay 'undertakes the risk of sanctions' under § 362." *In re Sage Richmond*, 297 B.R. at 61 (quoting *In re Brown*, 237 B.R. 316, 321 (Bankr. E.D. Va. 1999)). Had the Judgment Creditors filed a motion with this Court, their position could have been considered in an orderly fashion on a non-emergency basis. Instead, the Judgment Creditors surprised this Court and the other interested parties by obtaining an *ex parte* restraining order from the Tuscaloosa County Circuit Court that imposed broad, sweeping, and illegal restrictions on the Non-Debtor Defendants, Mary Paula White, and Shandi R. White. The Judgment Creditors prioritized the infliction of expense and uncertainty on these parties over deference to this Court's oversight of the bankruptcies.

Moreover, *even if* the Judgment Creditors' belief in the "reversion theory" provided a fig leaf of protection for their stay violation, that fig leaf was yanked away months ago. This Court unequivocally rejected the Judgment Creditors' arguments regarding the automatic stay during the June 4 hearing on the Non-Debtor Defendants' Motion to Enforce the Automatic Stay and entered

21

an order granted the requested enforcement the same day. The Judgment Creditors have no excuse for misunderstanding of the scope of the automatic stay after that point.

At whatever point the Judgment Creditors first latched on to the "reversion theory," they were not relying on a firm foundation of authority to permit their actions. Instead, they were defending their violation of the automatic stay based on a minority position dubiously carving out exceptions to the automatic stay and declining to address the majority position among the courts. The automatic stay is neutered if locating a handful of contrary non-binding court cases gives a creditor a get-out-of-jail-free card for calculated conduct that (under the majority consensus) violates the automatic stay. The Judgment Creditors gambled with full knowledge of the stakes.

## III. The Judgment Creditors' Request for Relief from the Automatic Stay Should Be Denied.

The Judgment Creditors' alternative request for stay relief should also be denied. As an initial matter, it is unclear what sort of relief the Judgment Creditors intend to seek. On the one hand, they purport to seek ***prospective*** "relief from the stay for the Judgment Creditors to pursue their fraudulent transfer claims against [Knobloch, Tannehill, and SERMA Funding]." Motion at p. 11. On the other hand, the Judgment Creditors have expressly acknowledged to this Court that "[t]he six-year statute of limitations" for their fraudulent transfer act claims "expire[d] in August of this year." Doc. 722 (July 9, 2025 Tr.) at 23:17-18. Thus, in order to get the relief they seek, the Judgment Creditors will need relief with ***retroactive*** effect—in other words, an "annulment" of the automatic stay. *Patel*, 142 F.4th at 1320 ("[A]nnulments 'grant retroactive relief from the automatic stay ....'" (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984)). As a result, the Judgment Creditors' "alternative" request for relief is merely a duplicative one.

22

The Judgment Creditors try to avoid that problem by suggesting that if the Court grants them relief from the automatic stay, they would be able to file an amended complaint[14] that would (presumably) relate back to their original complaint, apparently to avoid their statute-of-limitations problem. *See* Motion at p. 15. Even aside from the issue of whether they are entitled to stay relief (which is addressed below), that request has at least three fatal problems.

**First**, this Court has been divested of jurisdiction to consider any request related to an amended complaint that might "relate back" because the scope of the first complaint is squarely teed up for a pending appeal before the District Court. The Judgment Creditors' request for stay relief goes directly to the questions of the scope of the automatic stay and the parties entitled to enforce it—in other words, the very issues presented in the Non-Debtor Defendants' pending appeal. Thus, the relief would clearly "interfere with the appeal process," and this Court "does not have any jurisdiction" over the request for stay relief "and should not interfere with the appeal process." *In re Bilzerian*, 188 B.R. at 45.

**Second**, and relatedly, an amended complaint cannot "relate back" if there is nothing for it to "relate back" to. Under binding Eleventh Circuit precedent, "[a]ctions taken in violation of the automatic stay are void and without effect," *Borg-Warner Accept. Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982)—that is, it is "as if [the action] never happened." *In re Capgro Leasing Assocs.*, 169 B.R. 305, 314 (Bankr. E.D.N.Y. 1994). Here, the Court has already declared that the automatic stay applied to the Judgment Creditors' fraudulent transfer act claims against Knobloch, SERMA

---

[14] The proposed amended complaint is not a good-faith pleading. The amended complaint contains long-discredited factual allegations, such as claiming that Tannehill and Knobloch do no maintain "corporate records or bank accounts," and that Knobloch "does not conduct business with any [unrelated] entity." *See* Doc. 714-1 ¶¶ 56, 61, 62. The Judgment Creditors obtained Tannehill and Knobloch's supposedly non-existent "corporate records" and copies of statements from their supposedly non-existent "bank accounts" **months** ago.

Funding, and Tannehill, *see* Doc. 699 at p. 19,[15] and thus those claims in the original complaint are void. Void claims do not toll a statute of limitations. *See Wombles v. Hagans*, 2012 WL 5512336, at *3 (M.D. Ala. Nov. 14, 2012) (holding that complaint filed in unknowing violation of the automatic stay failed to toll plaintiff's statute of limitations). The Judgment Creditors provide no explanation as to how their proposed amended complaint could relate back to a void claim that had no tolling effect.

  ***Third***, the Judgment Creditors have not teed up the relation-back issue, and it would be improper for the Court to address it at this time. The Motion does not even cite Fed. R. Bankr. P. 7015(c) or Fed. R. Civ. P. 15(c), which expressly govern when an amended complaint relates back to an original pleading for the purposes of satisfying the statute of limitations, much less explain why the relation-back requirements are satisfied here. Because the Judgment Creditors failed to explain how Rule 15(c) applies here and allows the relief they seek, it would be inappropriate for the Bankruptcy Court to grant such relief.

  Separately from these more general problems, the Judgment Creditors' request for leave to pursue their fraudulent transfer claims should be denied, as no cause exists justifying relief from the automatic stay. *See* 11 U.S.C. § 362(d). The Judgment Creditors hardly address this issue at all, instead merely restating the substance of their fraudulent transfer claims and claiming those allegations serve as evidence of "bad faith actions of the Debtors and the Non-Debtor Parties" and the "hardships imposed on the Judgment Creditors." *See* Motion at p. 12. But as addressed above at length, the fault lies not with the stars, nor with the actions of the Debtors or Non-Debtor Parties, but with the Judgment Creditors themselves. The Judgment Creditors wanted to spring an ambush in

---

[15] While the Court suggested that the Judgment Creditors' fraudulent transfer act claims against the individual defendants violated the automatic stay, it concluded that the individual defendants were not within the statutory zone of interests and thus could not enforce the automatic stay. *See* Doc. 699 at 14-15. That issue is subject to the individual defendants' appeal pending before the District Court.

state court, either not reckoning on the obvious implications of the automatic stay, or, at best, putting their faith into an extreme minority view espoused in a handful of decisions. Even after this Court ruled that the lawsuit violated the automatic stay, they failed to ask for stay relief for over another three months.

The cases cited by the Judgment Creditors do little to advance their arguments. On pages 12-13 of the Motion, they merely recite the same cases they previously cited to the Court in support of the "reversion theory," which this Court has already rejected. *Compare* Doc. 714 at pp. 12-13 *with* Doc. 659 at pp. 6-7; *see* Doc. 699 at 23-24. The new cases cited by the Judgment Creditors on pages 13 and 14 of the Motion (*Martelli v. Colts Neck Golf & Country Club*, 2015 WL 5032621 (D.N.J. Aug. 25, 2015) and *In re Melly*, 2019 WL 1953661 (Bankr. D.N.J. April 29, 2019)) merely stand for the proposition that once a trustee or debtor in possession has affirmatively refused to pursue fraudulent transfer claims on behalf of the estate, it may be appropriate for the court to grant leave to a creditor to pursue those claims. But as the Judgment Creditors concede, that is most certainly not the fact pattern here, where the Trustee has filed both the Substantive Consolidation Complaint and the Trustee Fraudulent Transfer Claims Complaint, asserting, in essence, the exact claims sought to be litigated by the Judgment Creditors. If the Judgment Creditors were granted the relief they seek, those claims would be pending in three cases at the same time.

In the end, the Judgment Creditors fail to show that cause exists for stay relief. The claims they wish to pursue are covered by the actions filed by the Trustee and remain pending. Any prejudice the Judgment Creditors have suffered is due to their own decision to seek a state-court ambush and only ask for stay relief when it is far too late.

## **CONCLUSION**

For the reasons stated above, the Judgment Creditors' Motion should be denied.

Respectfully submitted this the 20th day of October, 2025.

/s/ R. Aaron Chastain
R. Aaron Chastain
James B. Bailey
**BRADLEY ARANT BOULT CUMMINGS LLP**
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 488-6647
achastain@bradley.com, jbailey@bradley.com

*Attorneys for Knobloch, Inc., Tannehill Sewer, LLC, SERMA Funding, LLC, Shandi R. White, and Mary P. White*

## CERTIFICATE OF SERVICE

I certify that on October 20, 2025, I filed the foregoing through the Court's Electronic Filing System, which will provide notice of such filing to all attorneys of record.

/s/ R. Aaron Chastain
OF COUNSEL

26